## Black Mountain Corporation v. Partin's Adm'r.

(Decided Oct. 11, 1935.)

B. M. LEE for appellant.

G. G. RAWLINGS and VANCE KING for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Reversing.

This is the fifth appeal of this case. The opinions on the four former appeals may be found in 237 Ky. 556, 36 S. W. (2d) 1; 243 Ky. 791, 49 S. W. (2d) 1014; 248 Ky. 32, 58 S. W. (2d) 234, 93 A. L. R. 606; and 254 Ky. 404, 71 S. W. (2d) 984.

Upon a remand and trial of the case, the facts heard on this (the fifth) trial of the case were again substantially the same as introduced on the former trials. There was no substantial change in the testimony with the exception of some further evidence introduced in support of plaintiff's sudden emergency theory of the case, which defendant by its counter proof contradicted. Also, additional testimony was intro-

duced by defendant to overcome the liability implied under the res ipsa loquitur doctrine, which tended to rebut the implication of negligence by showing its exercise of reasonable and ordinary care in the operation of its equipment by reason of its having maintained a regular and customary inspection of its operated mine cars and equipment.

To this avoiding evidence, plaintiff in turn countered with rebuttal evidence to the effect that no regular nor any inspection adequate for making timely discovery and repair of defective equipment was maintained by defendant.

The case was thereupon again submitted the jury under lengthy instructions offered by both the parties, purporting to cover the evidence and their respective theories of the case, under which the jury returned a verdict for $2,500 for the plaintiff.

The defendant, Black Mountain Corporation, again appeals from this judgment, seeking its reversal upon the following grounds: (1) That the trial court erred in permitting the plaintiff to introduce incompetent evidence over the objections of the defendant; (2) that it erred in overruling its motion for a peremptory instruction; (3, 4) that instructions Nos. 1, 2, 3, and 3a as given by the court were erroneous; (5) that plaintiff's counsel in his closing argument of the case was guilty of such improper conduct and unfair argument as in themselves require a reversal of the judgment, even had there been no other errors committed; and (6) that the verdict of the jury is not sustained by the evidence and is contrary thereto and appears to be the result of passion and prejudice on the part of the jury, allegedly brought about by the false testimony of the witness Patrick, the improper argument of plaintiff's attorney, and the sympathy thereby aroused on the part of the jury for the widow and children.

The appellee, in answer to the last-named objection, that the verdict of the jury was upon this trial not sustained by the evidence, contends that the provisions of section 341 of the Civil Code of Practice, providing, in part, that no "more than two new appeals be granted to a party upon the ground that the verdict is not sustained by the evidence," is here applicable; and that as there have now been three trials of this case upon its merits and three verdicts returned therein for appellee,

the court is not now authorized to disturb this third verdict upon the alleged ground that it is not sustained by the evidence.

In considering the merit of this argument and accuracy of statement of its grounds, it is to be noted that upon the first of these trials no verdict was obtained, but there was only determined a procedural question by the court by which it was adjudged that Partin's estate was not barred from its right to file a common-law action for damages for his death by reason of its having first filed a claim for compensation with the Workmen's Compensation Board therefor, which it had disallowed upon the ground that it did not have jurisdiction of the case, due to its finding that Partin, when injured in its mines, was not an employee of the defendant.

Later a common-law action was brought in the Harlan circuit court, wherein upon a second trial Partin's administrator sought to recover damages on account of the death of Partin, allegedly caused by his being crushed in appellant's coal mine by a cut of runaway cars. There the plaintiff, after introducing testimony tending to show that Partin was at the time of his fatal accident an invitee in defendant's mine, rested his case, relying on the doctrine of res ipsa loquitur for recovery.

Plaintiff's right to recover upon this evidence was challenged by defendant's motion for a peremptory instruction, which was rightly overruled (as we held upon appeal) at this time. The defendant, however, did not rest on his challenge to the sufficiency of plaintiff's evidence to carry his case to the jury, but introduced its counter evidence, tending to show a proper inspection made of its cars, which this court, upon appeal, held overcame the presumption in favor of the plaintiff raised under the doctrine of res ipsa loquitur, and that, the presumption having been overcome by such evidence, the trial court should have peremptorily instructed the jury to find for the defendant upon the whole case. Upon such ground the verdict recovered in the trial court was set aside and a new trial granted.

Upon the return trial of the case, again the plaintiff introduced substantially the same evidence tending to show that Partin was an invitee in defendant's mine when he had been killed by a cut of runaway mine cars. Also, upon this trial he produced additional evidence to

the effect that immediately after Partin had been thus crushed, the witness Patrick examined the 1¼″ coupling link on the mine car, from whence the runaway cars had come, and found it had been worn down about ¼ of an inch and was broken in two. Upon this showing the administrator rested his case, whence no verdict was recovered, but upon motion of defendant, the court peremptorily instructed the jury to find for it.

Upon plaintiff's appeal from this judgment, it was reversed under the rule declared in the opinion, that while the principle of res ipsa loquitur does not apply where plaintiff has full knowledge of and testifies to the specific act of negligence causing the injury, or there is direct evidence as to its precise cause and all the facts and circumstances attendant upon the occurrence clearly appear, the plaintiff is not deprived of the benefit of the doctrine of res ipsa loquitur by the mere introduction of evidence which does not establish the facts as to the precise cause of the accident or leaves the matter doubtful, as was there held to be the case, as the witness only undertook to testify as to the wear on the car link as tending to show the cause of its breaking, whereas it might have been due to an excessive load on the link, an unnecessary jerk, or other cause of which the coal company had knowledge to the exclusion of the plaintiff. In other words, the effect of such additional evidence being only to unsuccessfully attempt to show what caused the link to break, it did not displace the presumption of negligence on defendant's part arising from the facts of the case by virtue of the res ipsa loquitur rule.

On the return to the trial court, the case was again submitted upon substantially the same evidence to the jury, but without instructions given it as to the amount it might find. Upon the jury's finding for plaintiff, but without fixing any sum of damage, the court adjudged that plaintiff should recover no amount of damages, but only his costs. Upon the fourth appeal in this action, prosecuted from that judgment, it was reversed upon the ground that plaintiff was entitled to have his cause submitted under proper instructions, which it was error of the court to refuse to give when requested after plaintiff's discovery of the omission.

Upon a remand of the case, and hearing had, upon this, its fifth trial, a verdict was recovered (as herein-

above stated) for $2,500, upon which judgment was entered. An appeal is now prosecuted from that judgment for a new trial, partly based upon the ground that again the verdict was not sustained by the evidence.

From this review of the matters decided upon the former appeals, setting forth the grounds upon which reversals of the four new trials were therein granted, it is at once apparent that the appellee's contention that the provision of section 341 of the Civil Code of Practice, quoted supra, is not here applicable, precluding appellant from the right to a new trial, as coming within its express inhibition that no "more than two new trials be granted to a party upon the ground that the verdict is not sustained by the evidence," nor is it well made or meritorious. This provision necessarily means that two new trials may be granted if the verdict is not sustained by the evidence, and we cannot extend the statute. To such effect see the case of Louisville & N. R. Co. v. Daniel, 131 Ky. 689, 115 S. W. 804, 806, 1198, 119 S. W. 229, where, in construing that section, we said:

"It may now be considered as the settled practice that, when there have been three verdicts upon substantially the same evidence for the same party, the third verdict will not be disturbed upon the sole ground that it is not supported by, or is clearly against, the weight of the evidence And this rule will obtain, although either one or both of the first two verdicts were set aside for errors of law appearing in the record. But there must be three verdicts. * * * This code provision however, and the construction given to it, does not limit the right of this court to set aside verdicts and grant a new trial when errors of law have been committed to the prejudice of the party appealing, or when the verdict is so excessive as to make it plain that it was given under the influence of passion or prejudice. When either of these conditions is made to appear, any number of verdicts may be set aside and new trials granted. City of Bardstown v. Nelson County, 121 Ky. 737, 90 S. W. 246 [28 Ky. Law Rep. 710]; Louisville & N. R. Co. v. Ricketts, 52 S. W. 939, 21 Ky. Law Rep. 662; Louisville & N. R. Co. v. Carter, 86 S. W. 685, 27 Ky. Law Rep. 748."

Appellant further criticizes as erroneous certain

named instructions given by the court, to which assignment, without here extending the opinion by a detailed discussion of the point argued, we deem it sufficient to say that we find appellant's attack upon the instructions to be without merit, in that they appear to be well within "the law of the case" as laid down in the opinions rendered upon the former appeals of this case, and to clearly and properly submit the issues and opposing theories of the parties based upon the conflicting evidence introduced by them in support thereof, and are practically as offered and asked by the parties as covering their conflicting theories of the case.

Turning now our attention to yet a further and final ground upon which appellant seeks a reversal of the judgment and a new trial, which is the alleged misconduct and unfair and improper argument on the part of the appellee's counsel. This ground, insisted upon as a reversible error, it is our conclusion presents a more serious question.

The bill of exceptions contains the following statements as having been improperly made by G. G. Rawlings, appellee's counsel, in his closing argument to the jury:

" 'There was no evidence of any inspection by the defendant of its equipment and that the witness, Alvin Mullins, did not know anything about the inspection, and that the man who actually did the inspecting was then in the employment of the defendant and was not produced by it as a witness.' Defendant objected to this argument and the court told the jury that it would remember the evidence and be governed by it.

"Also in the course of his argument to the jury he stated as follows: 'Some of you ladies and gentlemen may have known E. B. Childers in his lifetime, and I hope you did. I dislike to talk about a man who is dead but I knew him and I know that if the plaintiff's witness, Patrick, would have accepted it, he would have paid him and bribed him to appear here as a witness against this widow and children to try to defeat their claim.'

"Defendant objected to this argument and the court admonished the attorney to confine himself to the record.

"That he further improperly stated to the jury that 'a substantial verdict should be rendered against the defendant in this case who had murdered the husband of this poor woman, who is seated at the table in the presence of this jury.'

"Defendant objected to this argument and the court told the jury not to consider that statement by the attorney that there was no claim that the defendant murdered her husband."

"And further in the course of his argument to the jury, he also said to them: 'I want to call your attention to the present superintendent of this mine, Mr. Asbury, who sat at defendant's table while plaintiff's evidence was being introduced, and looked at the jury and smiled, and any man who could laugh at as serious matter as the death of this poor woman's husband should have a substantial verdict rendered against his company to make them more careful of the lives of human beings. From his attitude and conduct in laughing when plaintiff's evidence was being introduced, if this jury fails to bring in a verdict in this case and another accident happened in which two or three men are killed, the superintendent would laugh himself to death over it.'

"The attorney for the plaintiff was in tears when he made these statements to the jury.

"The defendant objected to all this argument at the time.

"The court merely admonished the jury that they would be governed by the evidence and instructions in this case and not by argument of counsel, to which ruling of the court the defendant excepted at the time and still excepts."

To the first of these criticized statements, the bill of exceptions recites only that counsel objected. The purpose of a bill of exceptions is to show the exceptions that were taken and the rulings of the court, and where it appears that counsel only objected, but took no exception to the complained of argument, the error is not available to the appellant. Consolidated Coach Corporation v. Garmon, 233 Ky. 464, 26 S. W. (2d) 20. However, to some of the prejudicial and inflammatory arguments made, both objections and exceptions were

taken to the court's ruling thereon, and to the weak admonition of the court then given to the jury, to not regard it. Appellant insists that the effect of such character of admonition given was ineffective to counteract the injury done it through such admitted improper effort made to influence and prejudice the jury against it as a corporation defendant.

We are constrained to agree with this contention. The extravagant and inflammatory appeal made by appellee's counsel in closing argument, exhorting the jury to return a substantial verdict against the defendant, assailed and branded as one "who had murdered the husband of this poor woman" certainly went far afield of the record and was made with reckless and wanton disregard of the fact that such statement was unsupported by any evidence in the case, as there was absolute absence of either evidence or claim made that "this poor woman's husband" had been murdered by either the defendant or by any one, but only that he had been accidentally killed by a cut of runaway cars while in defendant's mine. The general rule condemning this character of argument and resort to such unbecoming demagoguery, motivated and prompted by counsel's zeal and desire to thereby so inflame the minds of the jury as to capture from it an undue and unjust verdict, is thus generally declared by the courts:

"It is the unquestionable privilege of counsel to indulge in all fair argument in favor of the contentions of his client. But he is outside of his duty and his right when he appeals to prejudice, irrelevant to the case. Properly, prejudice has no more sanction at the bar than on the bench. An advocate may make himself the alter ego of his client, and indulge in prejudice in his favor. He may even share his client's prejudice against his adversary, as far as they rest on the facts in his case. But he has neither duty nor right to appeal to prejudices, just or unjust, against his adversary, dehors the very case he has to try. The fullest freedom of speech within the duty of his profession should be accorded to counsel, but it is license, not freedom of speech, to travel out of the record, basing his argument on facts not appearing, and appealing to prejudices irrelevant to the case and out side the proof. * * * Where the admonition of

the court does not prove sufficient to prevent improper and dangerous appeals to the prejudice of jurors, it becomes necessary rigidly· to enforce the general rule that requires a reversal whenever the error is raised by a proper exception.

"Much latitude is accorded counsel in performing the important duties which they owe to clients and to public justice. In its proper sphere the argument of counsel to the jury is subject to no censorship or restriction by the court, but it should never be permitted to degenerate into wanton abuse or unauthorized license."

The statements used by counsel in his closing argument, and here objected to, were clearly made to thus wantonly prejudice the jury against the defendant as a corporation and to enlist unfairly and improperly the sympathies of the jury for the plaintiff "widow and children" because poor. It was manifestly improper for counsel to urge that the jury render a substantial verdict against the defendant, "who had murdered the husband of this poor woman." There was nothing in the record warranting the abuse of the company as a murderer where here it was merely shown by the record that Partin met his death by a most unfortunate accident, through having been caught and crushed by a cut of runaway mine cars while in the company's mine. Again there is no doubt but that it was alike unfair and prejudicial for appellee's counsel to make the impassioned appeal to the jury, (irrelevantly and prejudicially characterizing the defendant as cruel and ghoulish merely because its defendant superintendent had smiled at the jury while some evidence was being introduced) that "if this jury fails to bring in a verdict in this case and another accident happened in which two or three men are killed, the superintendent would laugh himself to death over it." Certainly such form of argument and inflammatory effort to swell the amount of a hoped for verdict against a corporation is not to be condoned on the ground that the verdict recovered was not one in so great an amount as to indicate prejudice, as it might well have been, had not the jury become prejudiced by such improper appeals, that no verdict for any amount would have been returned by it.

In the case of Owensboro Shovel & Tool Co. v. Moore, 154 Ky. 431, 157 S. W. 1121, 1123, we said:

"We have so often held that trial courts should not permit attorneys, in the presentation of their client's case, to make statements not supported by the record, that it would seem almost unnecessary to repeat it here. We have likewise held that, where counsel persists in violating this rule and recovers a verdict, he should be deprived of the fruits of victory thus earned by having the verdict set aside and a new trial awarded. If trial courts would rigidly enforce this rule and promptly set aside verdicts in cases where lawyers had, in argument, over the objection of opposing counsel, made prejudicial statements not supported by the record, lawyers would cease offending in this particular. Laxity tends to encourage rather than discourage this practice of indulging in too wide a range on the part of counsel in the presentation of their cases. It should not be tolerated. When a lawyer makes a statement of fact wholly unsupported by the record, the trial court should, without waiting for objection to be made, promptly reprimand the lawyer and instruct the jury to disregard the statement; and where he regards it of such a prejudicial nature that it may improperly influence the jury he should set aside any verdict obtained in favor of counsel so offending."

Such attempt as the court did there make to eliminate the objectionable matter stated or to remove the prejudicial effect of the improper argument of counsel was feeble and tardy, as here it was also. The court should have promptly reprimanded counsel for his improper conduct and forcefully instructed the jury, directing it to entirely disregard the improper statements. Instead, the court, upon defendant's objection to counsel's persistence in violating this rule, merely insufficiently admonished the jury that they would be governed by the evidence and instructions in the case and not by argument of counsel. Where counsel persists, as here shown to have been the case, in violating this rule and through such improper methods employed can be considered to have thereby recovered a verdict, he "should be deprived of the fruits of victory thus earned by having the verdict set aside and a new trial awarded." As to this, we are of the opinion that the improper argument here wrongfully indulged in by counsel was of such aggravated character as precludes appellant from

having received the fair trial by the jury under the law and the evidence to which it was entitled, and as such was thereby reversibly prejudiced in its substantial rights, for which reason the judgment is reversed, with directions for another trial in conformity with this and the former opinions.