## Louisville & Nashville Railroad Company v. Messer.

(Decided April 21, 1915.)

### Appeal from Whitley Circuit Court.

1. Carriers—Personal Injury—Evidence—Res Gestae.—In an action for damages for personal injuries a woman passenger testified that she was jerked from a train by the flagman. She immediately said: "You must be in a hurry." The flagman replied: "We are in a hurry." She then said: "You wouldn't treat me this way if my husband was with me; you see I am by myself with my little children and cannot help myself." Held, that the conversation was admissible under the res gestae rule.

2. Carriers—Evidence—Sufficiency.—In an action for damages by a woman passenger for personal injuries alleged to have resulted in a miscarriage, evidence examined and held sufficient to sustain a finding in favor of plaintiff.

3. Carriers—Passengers—Instructions.—An instruction that it was the duty of the carrier to exercise the highest degree of care to safely carry the plaintiff while a passenger on its train mentioned in the evidence, and to allow her to alight from said train in safety, held not prejudicial in view of the fact that the real issue was whether or not the flagman pulled or jerked plaintiff from the car and this issue was properly submitted to the jury.

HIRAM H. TYE and BENJAMIN D. WARFIELD for appellant.

J. M. ROBSION for appellee.

Opinion of the Court by William Rogers Clay, Commissioner—Affirming.

This is a personal injury case in which plaintiff, Mahala Messer, recovered of defendant, Louisville & Nashville Railroad Company, a verdict and judgment of $3,000.00. The railroad company appeals.

According to the evidence of plaintiff, she was a passenger on defendant's train en route to her home at Gatliff. She was accompanied by her three children and by her sister-in-law, Mrs. Shore, and her child. When the train reached Savoy plaintiff and Mrs. Shore were the last of the passengers to leave the coach. Mrs. Shore and her child first alighted. Plaintiff, with her two-year-old child in her arms, started down the steps. Her son about five years of age was following her. When plaintiff got on the second step and looked back to see what had become of her son, the flagman caught hold of her arm and gave her a jerk that caused her to fall from the second step to the ground with the child in her arms. Plaintiff immediately began suffering with a pain in her right side as if something had pulled loose. Both plaintiff and Mrs. Shore testified to the foregoing facts. While on her way to Gatliff and to her home plaintiff continued to suffer. About thirty minutes after she reached her home she went to bed and remained in bed about ten days. She had heavy pains and frequently passed blood. With the exception of a day or two at a time she remained in bed from the day of the accident for a period of about a month and a half, when she had a miscarriage. Prior to the accident she had been well and strong. Thirteen days before that time she had taken a twenty-mile trip over the mountains in an "Old Hickory" wagon with spring seats. She did not suffer any ill consequences from this trip. A few days after the accident two physicians examined the plaintiff and diagnosed the case as threatened abortion.

Defendant's conductor and brakeman denied all knowledge of the accident, and stated, in substance, that no such occurrence took place. Plaintiff's family physician testified that he examined plaintiff and found tubercular baccilli present. In his opinion, if the jar incident to plaintiff's getting off the train had been sufficient to bring on a miscarriage the miscarriage would have followed within twenty-four to forty-eight hours.

Two physicians also testified that when they examined plaintiff the womb was not dilated and there was no discharge therefrom.

The first ground urged for reversal is the admission of incompetent evidence. The evidence complained of is as follows:

"Q. Did you say anything to the flagman, or he to you, at the time he took hold of your arm? (Defendant objected; overruled; exception.) A. Yes. Q. What was it? (Defendant objected; overruled; exception.) A. I says to him, "You must be in a hurry,' and he says, 'We are in a hurry,' and I says, 'You wouldn't treat me this way if my husband was with me; you see I am by myself with my little children and cannot help myself.' (Mr. Tye: I move the court to exclude that answer from the jury, and that they be instructed not to consider it. The court: Let the motion be entered.)"

Mrs. Shore also testified to the same effect. It will be observed that the court did not pass on the objection at the time it was made, but reserved his ruling. When the flagman Floyd was on the stand he was asked if the conversation above referred to took place, and he replied in the negative. Plaintiff and Mrs. Shore were then introduced in rebuttal and permitted to testify over defendant's objection that the conversation did take place. The court then admonished the jury that the testimony thus given in rebuttal could be received and considered by them only for the purpose of contradicting or impeaching the flagman Floyd.

Savoy was a wayside station. The train stopped for but a moment. The conversation complained of took place between the flagman and plaintiff while the train was still standing and within a few seconds after the injury occurred. The statements were practically contemporaneous with the injury. There was no time for reflection or deliberation. The remarks were spontaneous utterances growing out of the transaction itself. They were explanatory of the cause of the accident. They show that there was something unusual in the conduct of the flagman. In the case of Louisville & Nashville Railroad Co. v. Earl's Admx., 94 Ky., 368, a statement of the deceased immediately following the accident to the effect that the accident was caused by the fool fireman was held admissible under the *res gestae* rule. In Brown

v. Louisville R. Co., 21 Ky. L. Rep., 995, 53 S. W., 1041, a passenger fell in alighting from a street car. After she was assisted to her feet, she said that her fall was caused by the driver of the car starting it while she was in the act of alighting therefrom. This statement was held admissible. A factory boy was hurt, and a second or two thereafter he ran out of the room crying, ''My God, what will my poor mother do?'' The exclamation was held competent as part of the *res gestae*. Thomas Madden Son & Co. v. Wilcox, 174 Ind., 657, 91 N. E., 933. In the case of Cross Lake Logging Co. v. Joyce, 28 C. C. A., 250, 55 U. S. App., 221, a man on a log incline was hurt by reason of the carelessness of a fellow workman. That day the injured man had complained to the superintendent, who had promised to remove the workman. Immediately after the accident the injured man said to the superintendent: ''Frank, I would not have lost my leg if you had done as you had agreed to and put another man in his place.'' The statement was held admissible as a part of the *res gestae*. In the case of Hutcheis v. Cedar Rapids & M. C. R. Co., 128 Iowa, 279, 103 N. W., 779, a running board of a car was folded up and a hand rail let down in crossing a bridge. The bar was raised after crossing, but the step was not lowered. In stepping out a passenger fell and was injured. She exclaimed: ''Yes, let the step down after I fall.'' The statement was held admissible. Under the foregoing and other authorities which might be cited, we think the conversation complained of was clearly admissible as substantive evidence under the *res gestae* rule. It follows, of course, that defendant was not prejudiced by the ruling of the trial court that the evidence was admissible for purposes of impeachment only.

It is next insisted that the evidence is insufficient to show that the miscarriage was the result of the accident. In this connection it is argued that it is just as probable that the miscarriage was caused by the wagon ride which plaintiff took a few days before the accident. The several witnesses, however, testified that plaintiff was in good health up to the time that she was injured in getting from the train. She suffered no ill effects from the wagon ride. Immediately after the accident she began to suffer pain and pass blood. The pain continued until the miscarriage occurred. During this period she was

confined to the house practically all of the time. After the injury she was not subjected to any further jar nor did she engage in any labor that would account for the miscarriage. Under these circumstances, we cannot say that the finding of the jury is not supported by the evidence. Cumberland Railroad v. Baird, 156 Ky., 255, 160 S. W., 919.

Instruction No. 1 given by the trial court is as follows:

"1. It was the duty of the defendant railroad company to exercise the highest degree of care to safely carry the plaintiff, Mahala Messer, while a passenger on its train mentioned in the evidence, and to allow her to alight from said train in safety. If you shall believe from the evidence that the flagman of defendant company, while assisting passengers to alight from defendant's train at Savoy on the occasion mentioned in evidence, carelessly or negligently pulled or jerked the plaintiff, at a time when plaintiff was exercising ordinary care for her own safety, and while she was on the steps of said coach alighting therefrom, with such force or violence that the plaintiff was precipitated to the ground, injuring her in her body or limbs, from which she suffered pain or loss of power to perform labor, then the law is for the plaintiff, Mahala Messer, and you will so find."

The instruction is attacked on the ground that it imposed on the railroad company the duty to exercise the highest degree of care to safely carry plaintiff and to allow her to alight in safety. It is argued that as no accident happened to the train plaintiff had been safely carried to her destination and that in assisting her to alight the flagman was required to exercise only ordinary care. Louisville & Nashville Railroad Co. v. Lee, 140 Ky., 91. The language complained of was merely prefatory. The real issue was whether or not the flagman pulled or jerked plaintiff from the steps of the car. In submitting this, the real issue, the instruction is not subject to complaint. We are not, therefore, inclined to hold the instruction prejudicial for the reason assigned. Louisville & Interurban Railroad Company v. Hardin, 157 Ky., 13.

In reply to the contention that counsel for plaintiff was guilty of misconduct in his argument to the jury, it

is sufficient to say that we have carefully considered the language complained of and have reached the conclusion that it is not of such a prejudicial character as to justify a reversal.

Judgment affirmed.