## Consolidated Coach Corporation v. Garmon.

(Decided March 18, 1930.)

GARDNER K. BYERS and KEENON & HUGELET for appellant.

HUBBARD & HUBBARD for appellee.

OPINION OF THE COURT BY JUDGE LOGAN—Reversing.

Appellee obtained a judgment against appellant for $2,075 for injuries which she claimed that she received while riding on a bus operated by appellant between Elizabethtown and Louisville. The trip on which she claimed that she was injured was made by her and her husband on December 13, 1927. They had lived in Glasgow, but had decided to leave their location in that city and go to Louisville. They were driven in an automobile from Glasgow to Elizabethtown, where they boarded a bus scheduled to arrive in Louisville about 5:30 p. m. They sat in the rear of the bus during the entire journey.

At the time of this trip appellee had been in a pregnant condition for about four months. The injury complained of was caused by a collision between the bus on which she was riding and a street car traveling in the city of Louisville in front of the bus. The bus was following the street car at the time, and when it stopped, probably, according to the evidence, at an unusual place,

'the bus ran into the rear of the street car. It was a dark and rainy afternoon, and the traffic at the point of the collision was somewhat congested. It is the contention of appellee that the bus struck the rear of the street car with such force that she was thrown from her seat against the back of the seat in front of her, which struck across her abdomen and caused her to rebound against the back of the seat in which she was sitting. Inquiry was made by the driver of the bus to ascertain whether any one had been injured, and there was no claim at the time that an injury had been received by any one. When the bus reached the bus station and the passengers alighted, the husband of appellee told the driver that he and his wife had both been injured. Appellee and her husband went to a rooming house at 646 South Sixth street which was slightly more than a block from the point where she alighted from the bus. She testified that upon her arrival at the rooming house she was suffering with pains in her back, abdomen, and hips, and that her suffering was sufficiently intense to cause her to go to bed. Mrs. L. R. Cassidy, who appears to have been in charge of the rooming house, was at the time, or had been, a trained nurse. She examined appellee two or three days after she arrived at the rooming house, and she testified that she found a bruise across the abdomen of appellee almost as wide as the hand; that she also found her knees skinned and a bruise upon her back. There was some improvement in the condition of appellee, but she testified that she continued to suffer from her injuries until the 7th day of January, when a doctor was called in. On the night of the 15th of January she suffered a miscarriage, and she claims, in her testimony, that she has not recovered.

The evidence seems to preponderate in favor of the appellant that the collision was not such as to cause the injuries complained of, but there was a collision, and appellee testified intelligently and impressively that she was injured. She proved, by Mrs. Cassidy and others, that she had marks upon her body, and there is no question about the miscarriage. Her narrative as to how the injury was received is reasonable and the consequences of the injury were natural. It is most probably true that no injury to appellee would have followed the collision but for her physical condition at the time. The operators of buses must be held to know that there is a reasonable probability that women in a pregnant condition

may ride on the busses. It is possible that the vibrations of the bus, which are always more severe in the back seats, was the cause of the miscarriage, and that it would have resulted regardless of the collision. But the jury heard all of the facts and was made acquainted with all of the circumstances by the evidence and, under our system of jurisprudence, juries are the triers of the facts, and there is enough evidence to support the verdict of the jury.

The first ground relied on for reversal by the appellant is that counsel representing appellee was guilty of misconduct in his closing argument to the jury. The argument complained about was this: "Gentlemen, you should find a substantial verdict against this bus Consolidated Coach Corporation, this enormous corporation, so that they will not run into you or other people on the highway and will be more careful in the future."

In response to the argument made on this ground by appellant, counsel for appellee contends that no such language was used and that no objection was made to the argument of counsel for appellee at that time. It is stated, by counsel for appellee, that an affidavit was filed by Hugo Taustine, one of the attorneys representing appellant, to the effect that such a statement was made and that a counter affidavit was filed by W. A. Hubbard, one of the attorneys for appellee, and that the court simply allowed both of these affidavits to be made a part of the bill of exceptions. It is indeed unfortunate for appellee if no such argument was made and no objection was made to the argument, as the bill of exceptions, signed and approved by the court, states, in language plain and concise, that the argument was made and objected to. This court is not concerned with the affidavits that were filed. The bill of exceptions is controlling. There is no place for affidavits controverting an exception when the judge signs the bill of exceptions. Section 337, Civil Code of Practice, provides that the judge shall sign the bill of exceptions if he approves it. If he does not approve it, he shall correct it, or suffer the corrections to be made, and then sign it. If a party objects to the correction made by the judge which correction relates to the evidence, such party may, within five days after the bill is signed, file the exception as written by him, provided the truth of the exception be attested by the affidavits of two bystanders; but its truth may be controverted and maintained by other affidavits filed in

the clerk's office not exceeding five on either side. Here there was no objection to the bill of exceptions as signed by the judge. There was an effort to contradict the bill of exceptions by an affidavit, and this cannot be done except where the exception relates to the evidence and there has been an objection to the exception as approved by the judge. When the judge signs and approves a bill of exceptions, the truth of what he states, or certifies, as to bill of evidence may be controverted by the affidavits of bystanders in the form of a bill of evidence; but when he certifies as to his own ruling and exceptions taken during the trial, neither his statements, nor the truth of the record as made up, can be assailed by bystanders. In this case he certified that the attorney representing the appellee made the argument complained of, and that it was objected to. There can be no contradiction of this certification by affidavits. Garrott v. Ratliff, 83 Ky. 384, 7 Ky. Law Rep. 463; Patterson v. Com., 99 Ky. 610, 5 S. W. 765, 9 Ky. Law Rep. 481.

It must be taken as true that the attorney for appellee in his closing argument to the jury made the argument complained of, and it was improper and prejudicial under the authority of the case of Weil v. Hagan, 161 Ky. 292, 170 S. W. 618; Pullman Co. v. Pulliam, 187 Ky. 213, 218 S. W. 1005; Illinois Central Railroad Co. v. Proctor, 122 Ky. 92, 89 S. W. 714, 28 Ky. Law Rep 598.

It must also be taken as true that counsel for appellant objected to the argument, but that was not sufficient. He must have excepted to the ruling of the court or to the failure of the court to rule, and this was not done. The bill of exceptions fails to show that any exception was taken to the argument. It merely recites that counsel objected and still objects. A bill of exceptions is not to show objections that were made to things that transpired during the trial, but its purpose is to show the exceptions that were taken to the rulings of the court. If the argument was objected to and there was no ruling by the court, it must be presumed that the objection was abandoned. Because there is no exception to the argument, this error is not available to appellant.

Another ground relied on for reversal is that the court failed to properly instruct the jury on the question of negligence and proximate cause. It is admitted that the instructions are sufficient to cover ordinary collision cases and that they are in harmony with the instructions approved by this court in Union Casket Co. v. Reeves,

206 Ky. 581, 267 S. W. 1108, and George G. Fetter Co. v. Coggershall, 208 Ky. 721, 271 S. W.. 1074. But it is insisted that the facts in this case made necessary an additional instruction because, as it is contended, the proximate cause of the injury was the unusual stopping of the street car in front of the bus. It is contended that the stopping of the street car placed the driver of the bus in sudden peril, and that appellant was therefore entitled to an instruction on sudden peril or emergency. The argument is skillfully presented, but the question is not as hard as counsel for appellant make it appear. The evidence is sufficient to show that the driver of the bus placed himself in a position where the stopping of the street car would result in a collision. It was his duty to have his bus under such control and at such a distance from the street car that he would be able to stop it in time to avoid a collision in the event the street car should suddenly stop. He was driving behind the street car, and he knew that he had no control over its movements. The instruction defining the duties of the driver of the bus was sufficient, and no other instruction on that point was necessary.

A more serious question is presented, however, by another point urged against the instructions, but not pressed with the same vigor as the point just disposed of. It is insisted that the miscarriage was not shown to have been the direct result of the collision. We cannot agree with that contention. The evidence was sufficient to authorize the jury to determine that it resulted from the injury received because of the collision, and that the injury was the direct cause of the miscarriage. The evidence presented a further question of damages which went into the realms of speculation and was too remote to be considered as the direct result of the injury. Appellee claims that the miscarriage resulted in injuries and suffering that may be attributed to the miscarriage itself and not to the injury. The evidence does not present facts sufficient to enable a jury to determine that the continued suffering and injuries resulting from the miscarriage were caused by the collision. These may have been occasioned by reason of other conditions having no connection with the collision. The physical condition of appellee, the treatment she received by the physicians at the time of the miscarriage, and care and attention received by her after the event, may have been the cause of the continued disorders about which she com-

plains. The evidence is sufficient to show that she suffered between the time of the accident and until the time of her miscarriage, and, of course, the miscarriage resulted in certain natural suffering which may be traced directly to the collision. But the evidence was not such as to show that the lingering ailments and disorders which continued on down to the trial were the direct results of the collision. Dr. Johnson, who testified for appellee, stated that certain pains in the side and certain disorders attending the natural functions of appellee after the miscarriage were probably attributable to an infection following the miscarriage. This evidence was objected to and overruled and proper exceptions were reserved. There was evidence along this same line given by the doctor. He testified that an operation would probably be necessary for the removal of some of the genital organs. This evidence allowed the jury to find for appellee for suffering occasioned by the miscarriage, when the disorders were probably caused, according to the doctor, by an infection following the miscarriage. This evidence should not have been admitted. It is not shown that her suffering growing out of the infection was the direct result of the collision. Instead of an instruction, as contended for by appellant, limiting the recovery to the injuries other than those not directly connected with the collision, the court should have sustained objections to the evidence relating to these sufferings. The instructions, therefore, were proper, but incompetent evidence was admitted, and that is one of the grounds for a new trial.

The evidence relating to the injury to the husband, if any such was admitted, was incompetent. The evidence offered by appellant in an attempt to show that appellee had suffered a previous miscarriage was incompetent. This evidence was in the nature of a hospital record, and, under the authority of National Life & Accident Insurance Co. v. Cox, 174 Ky. 683, 192 S. W. 636, the record was not competent.

For the error in the admission of the incompetent evidence pointed out in the opinion, the judgment must be reversed.

Judgment reversed, and cause remanded for proceedings consistent with this opinion.