[Civ. No. 17820.   First Dist., Div. Two.   Aug. 19, 1958.]

SANDRA MARIAN SHEFFIELD, a Minor, etc., Appellant, v. J. FLOYD RUNNER, Respondent.

William R. Lowery for Appellant.

Peart, Baraty & Hassard, Alan L. Bonnington and Salvatore Bossio for Respondent.

DOOLING, J.—Plaintiff, through her guardian *ad litem*, appeals from a judgment of nonsuit in an action against defendant, a physician and surgeon, for malpractice resulting in the death of plaintiff's mother.

Respondent J. Floyd Runner, M.D., had been Margaret Sheffield's physician since 1948. He was called by her on February 14, 1954, at which time she complained of a rash, coughing and being sick all over. Respondent testified that an examination of Mrs. Sheffield resulted in a diagnosis of chicken pox and a bronchial cold.

Mrs. Phyllis Dodson testified that she visited Mrs. Sheffield at approximately 3 p. m. on February 14 and found her almost in a state of collapse, her breathing very labored. Mrs. Dodson telephoned Mrs. Sheffield's mother, Mrs. Wallis.

Mrs. Wallis testified that she arrived at her daughter's home about 10 p. m. At that time her daughter "looked awful," her skin was dark and she was gasping. Mrs. Wallis further testified that she telephoned respondent who told her that her daughter was very ill, that she had chicken pox "with pneumonia complicating it." There was testimony that after examining the patient on February 16, respondent stated "This is the worst case of chicken pox I have ever seen," and "This is a hospital case, but they won't take her on account of this other" (the chicken pox).

Mrs. Sheffield died at 7 a. m. February 17, 1954 and respondent arrived at her home at 8 a. m. Mrs. Wallis testified that, after respondent examined the deceased, he stated "I should have put her in the hospital." Respondent testified that on Tuesday the patient had a darkening of the skin over the hands and the membrane of the lips, that this indicated a cyanosis which is caused by "a poor aeration of the blood, which goes with pneumonia." This means that the oxygen is being cut

off from the blood supply. "It isn't picking up the standard amount of oxygen." Respondent further testified that it is usual, where cyanosis is marked, to administer oxygen.

The administrator of the Community Hospital of San Mateo County (in which county decedent resided) testified that this hospital had a communicable disease ward in February 1954 and on the 14th, 15th and 16th of that month there were beds available in this ward. Oxygen equipment was available at this hospital. Respondent made no effort to learn if there were hospital facilities open to the decedent in San Mateo County.

The death certificate filled out and signed by respondent listed the immediate cause of death as bronchial pneumonia and the antecedent cause as chicken pox with an interval of five days between the onset of both conditions and the death. Respondent's medical record of the case also lists the onset of pneumonia as five days prior to death.

Respondent contradicted the testimony above summarized in some important particulars but in passing upon a judgment of nonsuit in malpractice as in other cases we must consider the evidence most favorable to plaintiff and disregard such contradictions. (*McCurdy* v. *Hatfield,* 30 Cal.2d 492 [183 P.2d 269].)

The nonsuit was granted on the grounds that there was no proof that respondent failed to conform to medical practice in the community and no proof that the death was proximately caused by any such failure.

While expert testimony is required in a case of this sort to establish the standard of medical practice in the community, this evidence may be found in the testimony of the defendant physician, and his extrajudicial admissions have the same effect as direct expert testimony. (*Lashley* v. *Koerber,* 26 Cal.2d 83, 89 [156 P.2d 441]; *Lawless* v. *Calaway,* 24 Cal.2d 81, 90 [147 P.2d 604]; *Scott* v. *Sciaroni,* 66 Cal.App. 577, 582 [226 P. 827].)

Here the respondent testified that he found the decedent suffering from cyanosis and that where the cyanotic condition is marked it is usual to administer oxygen. There is testimony of his statement: "This is a hospital case but they won't take her on account of this other." There is testimony that there was an available hospital where they would accept her and that oxygen was available in this hospital; and there is testimony that after her death respondent said: "I should have put her in the hospital." Taking this evidence together

it is more than adequate to support a finding that under the prevailing standard of care in the community decedent should have been placed in a hospital by respondent.

■ While it is true, as argued by respondent, that the admissions of the physician must do more than show an honest mistake (*Lashley* v. *Koerber, supra,* 26 Cal.2d pp. 89, 90), that case goes on at page 90 to say that in passing on a nonsuit "where the statements are reasonably susceptible of more than one meaning, that meaning is to be placed on them which is favorable to plaintiff." Here, in addition to the other factors above outlined, we have the testimony of respondent's statement before death: "This is a hospital case . . ." and the statement after death: "I should have put her in the hospital."

■ Respondent argues that the statement after death does not prove knowledge before death that the decedent should have been hospitalized. But the statement after the death takes its color from the one made before death that "[t]his is a hospital case." The two statements taken together clearly make a case sufficient to go to the jury.

· ■ It is true as pointed out by respondent that there was no direct testimony that the failure to hospitalize decedent was the cause of her death. However, the circumstantial evidence was strong from which the jury could reasonably have drawn the inference of proximate cause. Decedent was cyanotic, i.e. by reason of her pneumonia she was not getting enough oxygen in her blood. It is usual in such cases to administer oxygen. Oxygen was available in the hospital to which she could have been admitted. She died of the pneumonia. Respondent's statement immediately following the death: "I should have put her in the hospital" is another factor to be weighed by the jury in determining proximate cause.

■ In civil cases proof of reasonable probability is all that is necessary. (*Spolter* v. *Four-Wheel Brake Service Co.,* 99 Cal.App.2d 690, 693 [222 P.2d 307].) ■ " 'It is not necessary, in order to establish a theory by circumstantial evidence, that the facts be such and so related to each other that such theory is the *only* conclusion that can fairly or reasonably be drawn therefrom . . .' [Citation]. 'The plaintiff relying on circumstantial evidence does not have to exclude the possibility of every other reasonable inference possibly derivable from the facts proved . . .' " (*Hilyar* v. *Union Ice Co.,* 45 Cal.2d 30, 38 [286 P.2d 21].) ■ If the evidence will support conflicting inferences, which inference shall be

drawn is for the jury to decide. (*Mah See* v. *North American Acc. Ins. Co.,* 190 Cal. 421, 426 [213 P. 42, 26 A.L.R. 123]; *Hamilton* v. *Pacific Elec. Ry. Co.,* 12 Cal.2d 598, 602-603 [86 P.2d 829].) █ A plaintiff is not required in a malpractice case "to demonstrate conclusively and beyond the possibility of a doubt" that the negligence resulted in the injury. If so "it would never be possible to recover in a case of negligence in the practice of a profession which is not an exact science." (*Dimock* v. *Miller,* 202 Cal. 668, 671 [262 P. 311].)

We find the evidence sufficient to support an inference by the jury that the death resulted from the failure to hospitalize decedent.

Judgment reversed.

Kaufman, P. J., and Draper, J., concurred.

A petition for a rehearing was denied September 18, 1958, and respondent's petition for a hearing by the Supreme Court was denied October 15, 1958. Shenk, J., Schauer, J., and Spence, J., were of the opinion that the petition should be granted.