123 So.2d 279 (1960)
Edith BIR and Bernard Bir, her husband, in his own right, Appellants,
v.
Richard L. FOSTER, M.D., and Marshall C. Sanford, M.D., Appellees.
No. 1818.
District Court of Appeal of Florida. Second District.
August 31, 1960.
Rehearing Denied October 3, 1960.
*280 Arthur J.J. Bohn, Fort Lauderdale, for appellants.
Edward L. Magill (of Blackwell, Walker & Gray), Miami, for appellee, Marshall C. Sanford, M.D.
Norman C. Roettger, Jr., (of Fleming, O'Bryan & Fleming), Fort Lauderdale, for appellee, Richard L. Foster, M.D.
ALLEN, Chief Judge.
The appellants filed their amended complaint in the lower court alleging medical malpractice against the appellees. The appellee, Sanford, filed a motion to strike and both appellees filed motions to dismiss on the ground that the complaint failed to state a cause of action upon which relief could be granted. The lower court entered an order granting the motions to dismiss in which the court stated "* * * that to permit the plaintiffs to further amend or further plead would be futile." The order then dismissed the complaint without leave to amend. A final order dismissing the cause was subsequently entered from which the appellants have prosecuted this appeal.
The material allegations of fact as set forth in the complaint are as follows:
The plaintiff, Edith Bir, employed the defendant, Richard L. Foster, M.D., as a physician to diagnose and treat a physical condition from which she was suffering. The defendant Foster examined Mrs. Bir and diagnosed her condition as being one of fibroid tumor or tumors of the uterus and recommended a surgical operation for the removal of these tumors. This diagnosis was based upon the findings that upon vaginal examination the defendant Foster found an irregular tumor mass in the pelvis extending on the right side half way up to the umbilicus; that this mass was movable; that there was a softening of the cervix; and that the corpus of the uterus seemed to be pushed to the left with a large fibroid tumor extending from the right side, approximately ten centimeters in diameter. The above findings were entered by Dr. Foster on his report dated September 12, 1957. The report also stated that Mrs. Bir had *281 first consulted him on September 5, 1957, complaining of abdominal pain and indigestion; that pain seemed to be in the right lower quadrant of her abdomen about the umbilicus; that she had suffered from this pain for three mouths and it was becoming more severe; that she had undergone a frog test for pregnancy on August 26, 1957, which was negative; that her last menstrual period was on May 30, 1957; and that she has had no symptoms of menopause, having borne three children and being only thirty-nine years old.
Dr. Foster had Mrs. Bir admitted to Holy Cross Hospital for the purpose of the surgical removal of the tumors on or about September 13, 1957. On the night preceding the operation, at the request of Dr. Foster, Mrs. Bir employed the defendant, Dr. Sanford, as a physician to diagnose and assist in treating her. That night, pursuant to the rules and regulations of the hospital, Dr. Sanford, as consulting physician, examined Mrs. Bir, examined the record of the hospital concerning her history and then issued a signed written opinion as follows:
"Report
"Findings: Abdominal pain  three months  last menstrual period May, 1957  three children, youngest ten years old  frog test negative  irregular masses over fundi and extending laterally attached to uterus  fully movable.
"Diagnosis: Uterine fibroids  multiple
"Recommendation: Patient should have hysterrectomy for removal of uterine fibroids.
 "s/ M.C. Sanford
"Room 365  Bed 4"
The complaint alleges that Dr. Sanford's examination of Mrs. Bir was performed in less than ten minutes; that it consisted of asking her a few questions, or pressing his fingers on the external skin of her abdomen and of visually examining her abdomen. During the examination, Mrs. Bir's body, excepting her abdomen, was kept covered with clothing and bed sheets and Dr. Sanford allegedly examined neither the patient's breasts nor did he make visual, manual, or mechanical examination of the vagina.
Dr. Foster and Dr. Sanford performed the operation the following morning. The surgery disclosed that Mrs. Bir did not have any condition of fibroid tumor but that her true condition was one of typical intrauterine pregnancy in an advanced stage of between three and four months which later and normally developed into the birth of a child on March 8, 1958.
The complaint, although lengthy and redundant, alleges that neither of the defendants was a qualified or practicing specialist in the field of gynecology or obstetrics; that each of the defendants was a member of the staff of doctors at Holy Cross Hospital; that neither of the defendants called in for consultation a specialist in the field of gynecology or obstetrics; that neither of the defendants caused to be made or requested any fluoroscopic or x-ray examination of Mrs. Bir for the purpose of ruling out pregnancy; that neither of the defendants made any attempt to determine the rate of growth of what they had erroneously diagnosed as tumors of the uterus, "although the rate of growth of a gravid uterus is not duplicated in nature"; and that neither defendant made additional biological tests to rule out pregnancy.
The pleader further alleged that Dr. Foster's report disclosed on its face that Mrs. Bir had both signs and symptoms of pregnancy advanced to between three and four months "* * * which signs and symptoms were then and are now universally recognized as such in the field of medicine. Two of the said cardinal symptoms were cessation of menstruation and nausea and vomiting, both of which were noted by defendant Richard L. Foster, M.D. in the hospital records prior to examination thereof by defendant Marshall C. Sanford, *282 M.D., were softening of the cervix, Hegar's sign, namely a softening and compressibility of the lower uterine segment and typical changes in the form, size, consistency, and position of the uterus." The pleader concludes by alleging the negligent nature of Dr. Foster's original examination and diagnosis; the negligent acceptance of that diagnosis and report by Dr. Sanford; the negligent and cursory nature of Dr. Sanford's examination at the hospital; and that the culmination of both defendants' gross negligence resulted in the performance of unnecessary surgery on Mrs. Bir causing her to "sustain serious and permanent injury and damage and * * * to sustain permanent, disfiguring scarring of her body and her nerves and nervous system were severely injured and damaged and she was caused to sustain severe and serious mental and emotional shock and disturbance and she was caused to lose earnings from a gainful employment at which she was employed at the time of said operation and from which she lost about four months earnings as the result of said operation.
Mrs. Bir then asked for $10,000 compensatory and $10,000 exemplary damages against each of the defendants.
In Count II of the complaint Mrs. Bir's husband, Bernard Bir, adopted the foregoing allegations and alleged loss of his wife's companionship and services for a period of time plus an incurred indebtedness for medical, hospital, and surgical expenses. Mr. Bir then requested $10,000 compensatory and $10,000 exemplary damages against each of the defendants. Both plaintiffs requested a jury trial on the issues.
This court is not concerned on this appeal with substantive principles of law concerning the requirements and duties of physicians and surgeons except from the pleading aspects of such duties in regard to the sufficiency of a complaint to state a cause of action, and more specifically where it is claimed that a wrong diagnosis was made. It has been established by numerous cases that in order to state a cause of action against a physician or surgeon based upon wrong diagnosis a complaint must allege facts from which the logical conclusion may be drawn that the defendant either did not possess the reasonable degree of learning, skill, and experience required by law, or did not exercise reasonable and ordinary care in the application thereof, or both, and that the failure was the proximate cause of particular damage to the plaintiff, the primary purpose being to adequately inform the defendant of the nature of the charges and prevent surprise, since he is usually required to produce highly specialized expert testimony in refutation of plaintiff's claim. See Hill v. Boughton, 146 Fla. 505, 1 So.2d 610, 613, 134 A.L.R. 678, and Annotation 134 A.L.R. 683.
The court in Hill v. Boughton, supra, stated:
"* * * A physician or surgeon does not insure the correctness of his diagnosis. His responsibility is to use ordinary skill and diligence and to apply the means and methods ordinarily and generally used by physicians of ordinary skill and learning in the practice of his profession to determine the nature of the ailment and to act upon his honest opinion and conclusion." (Citations omitted.)
After discussing various deficiencies of the complaint the court concluded in the Hill case by holding:
"It must, therefore, follow that unless plaintiff alleges the nature or identity of the malady of which she suffered and that such malady should have been recognized and diagnosed as such by a physician of ordinary skill and learning in practice of his profession, no cause of action is stated on the ground of erroneous diagnosis. Plaintiff must also allege the nature or identity of the malady suffered; that it was such that it should have been recognized, identified and diagnosed as such by a physician of ordinary skill and learning in the practice of his profession; that *283 it was not so recognized and treated as such malady would have been treated by a physician of ordinary skill and learning in his profession, and that the treatment administered by the defendant was not a proper treatment for the existing malady but resulted in damage to plaintiff."
In Crovella v. Cochrane, Fla.App. 1958, 102 So.2d 307, 311, the court noted that neither courts nor jurors know nor are they permitted to arbitrarily say what are the proper methods of diagnosing and treating human ailments but that expert opinion is necessary in most instances to inform the jurors of the proper procedures for diagnosing and treating the particular case. In discussing the degree of care that must be exercised by a specialist in a particular field of medicine as compared to the general practitioners, the court stated:
"* * * Neither insures the correctness of his diagnosis. Generally, it is the duty of each to apply to the diagnosis and treatment of his patient the skills, means, and methods that are recognized as necessary to be followed in the particular case according to the standards of those who are qualified by training and experience to perform similar services in the community."
The court then quoted the rule stated in Hill v. Boughton, supra, observing that such seemed to be the general rule.
The Florida Supreme Court in Atkins v. Humes, Fla. 1959, 110 So.2d 663, 666, commented in regard to two cases that had been urged before that court:
"These two decisions are typical of the many malpractice cases involving a charge of negligence based on the careless or unskillful administering of an approved medical treatment  as distinguished from a charge based on an incorrect diagnosis or the adoption of the wrong method of treatment  in which the courts have upheld a judgment for plaintiff or required the submission of the cause to a jury despite the absence of expert testimony that the acts complained of would amount to bad practice. Obviously, except in rare cases, neither the court nor the jury can or should be permitted to decide, arbitrarily, what is or is not a proper diagnosis or an acceptable method of treatment of a human ailment. Cf. Crovella v. Cochrane, Fla.App. 1958, 102 So.2d 307 * * *." (Emphasis added.)
Although the instant complaint is not a model pleading, it does allege acts and omissions that proximately caused the injury to plaintiff plus numerous allegations that these acts and omissions were negligently performed by the defendants. The plaintiffs alleged: the malady of which Mrs. Bir was afflicted; the symptoms and nature of the malady; that by the exercise of reasonable care and diligence the defendants could have ascertained and determined the identity of the malady of which Mrs. Bir suffered; that having failed to carefully and prudently ascertain the true nature of the malady, the surgery was unnecessary and constituted improper treatment; and that neither of the defendants performed such an examination or method of diagnosis that is usually approved and practiced by other members of the medical profession in the community possessing average skill, learning, and judgment. It therefore appears that under the language of the court in Hill v. Boughton and other authorities cited herein the motion to dismiss should have been denied by the lower court. Under the principles and authorities set forth herein, the complaint appears sufficient in its statement of a cause of action for malpractice and, therefore, the cause must be reversed.
The truth of the allegations of the complaint must be determined by a trial of the issues when the defendants will have an opportunity to show that they complied with the requirements of professional care in their diagnosis and treatment of the plaintiff. *284 It is often unfortunate that a professional man's reputation is injured by charges which are unjustified, but the only way, in the rare instances when professional negligence is present, that the injured party may obtain compensation is to file a complaint alleging failure of due care after which the defendant may answer giving his side of the controversy and have the court and jury determine the issues.
Reversed.
KANNER and SHANNON, JJ., concur.