Marie JARBOE and Robert M. Jarboe, Administrators of the Estate of Infant Jarboe, Appellants,

v.

Dr. Charles HARTING, Appellee.

Court of Appeals of Kentucky.

Nov. 19, 1965.

———◆———

Charles A. Williams, Paducah, for appellants.

Wheeler, Marshall & Manchester, Paducah, for appellee.

CULLEN, Commissioner.

Appellee Dr. Charles Harting made a diagnosis that appellant Mrs. Marie Jarboe, a 33-year-old married woman, was suffering from a uterine tumor, and pursuant to that diagnosis he subjected her to an operation in the course of which no tumor was found but the fact was discovered that Mrs. Jarboe was six to eight weeks pregnant. Twenty-two days after the operation Mrs. Jarboe had a miscarriage. Subsequently she brought action against Dr. Harting to recover damages for bodily injuries, pain and suffering, and hospital and medical expenses. Her husband, who had obtained appointment as administrator of the estate of the aborted child, joined in the suit seeking damages for wrongful death of the child. At the close of the plaintiffs' proof the court directed a verdict for the defendant and judgment was entered dismissing the claims. The Jarboes have appealed, maintaining that their evidence created jury issues.

For reasons hereinafter discussed we have concluded that the Jarboes' evidence was insufficient to have sustained a jury finding that the miscarriage was a proximate result of the operation. Accordingly, the court properly directed a verdict for the defendant on the claim of the administrator (we do not reach the question of whether the law recognizes a cause of action for wrongful death of a previable child). However, the claim of Mrs. Jarboe for personal injuries was not limited to those attributable to the miscarriage but included some attributable to the operation alone, so it was not proper to direct a verdict against her if, as hereinafter we shall discuss, her evidence was sufficient to make a jury issue of negligence in the diagnosis and decision to operate.

The evidence as relates to proximate cause consisted only of the fact that the miscarriage occurred 22 days after the operation, and the statement of Dr. Harting that the operation "could have" caused the miscarriage although in his opinion it did not. There was no medical testimony that the operation probably did cause the miscarriage, nor was there any evidence of any signs or symptoms of impending abortion between the time of the operation and the occurring of the miscarriage.

In Johnson v. Vaughn, Ky., 370 S.W.2d 591, we mentioned the difficulty in proving causation in malpractice cases and we held that circumstantial evidence may in some cases be sufficient to prove causation. But at the same time we recognized the rule that ordinarily expert evidence is necessary to support the conclusion of causation.

In Cumberland R. Co. v. Baird, 156 Ky. 255, 160 S.W. 919; Louisville & N. R. Co. v. Messer, 164 Ky. 218, 175 S.W. 360, and Consolidated Coach Corporation v. Garmon, 233 Ky. 464, 26 S.W.2d 20, the plaintiffs claiming damages for miscarriages were held entitled to go to the jury on the question of causation although they had no expert testimony to support their claims. However, in each of those cases symptoms of impending abortion appeared immediately or shortly after the injury, such as pains in the side and "flooding spells" in the Baird case, suffering of pain and passing of blood in the Messer case, and intense pains causing continuous confinement to bed in the Garmon case.

Our examination of decisions from other jurisdictions has led us to the conclusion that most other courts would not consider

the evidence in the instant case sufficient to establish proximate cause. See Annotations, 13 A.L.R.2d 11; 81 A.L.R.2d 597; 99 A.L.R.2d 1336.

■ There may, of course, be situations in which causation is so apparent that laymen with a general knowledge would have no difficulty in recognizing it. See Johnson v. Vaughn, Ky., 370 S.W.2d 591; Annotation, 13 A.L.R.2d 11 at page 34. But excepting those situations we have adhered to the rule that the causal connection between an accident and an injury must be shown by medical testimony and the testimony must be that the causation is probable and not merely possible. See Kelly Contracting Company v. Robinson, Ky., 377 S.W.2d 892.

■ It is general knowledge that miscarriages may result from myriad causes. There is nothing in the circumstances of the instant case to establish probably, rather than merely possibly, that the operation was the cause in this particular instance. Accordingly, we conclude that there was insufficient evidence of causation.

We now consider the question of whether there was sufficient proof of *negligence* to have required submission to the jury of Mrs. Jarboe's claim for damages for personal injuries attributable to the *operation.* (Of course there is no proximate cause problem as to those injuries as distinguished from the injuries attributable to the miscarriage.)

The evidence as relates to negligence was (1) Mrs. Jarboe was of an age at which pregnancy could normally occur; (2) she had some symptoms that were compatible with her being pregnant; (3) the question of whether she might be pregnant was raised in discussion at the time of her examination by Dr. Harting; (4) there was available a reasonably reliable test for pregnancy which could have been administered to Mrs. Jarboe and which the doctor told her he would administer in the hospital but which he did not administer; (5) after the operation the doctor told

Mr. Jarboe, "I should have run that test;" (6) there was no emergency condition indicating a necessity for an immediate operation.

■ Admittedly, the general rule is that expert testimony is required in a malpractice case to show that the defendant failed to conform to the required standard, which is, such reasonable and ordinary knowledge, skill and diligence as physicians in similar neighborhoods and surroundings ordinarily use under like circumstances. See Engle v. Clarke, Ky., 346 S.W.2d 13. However, it is a generally accepted proposition that the necessary expert testimony may consist of admissions by the defendant doctor. See Annotation, 83 A.L.R.2d 7, at pages 96 to 98; Annotation, 81 A.L.R.2d 597, at pages 625 to 627. And there is an exception to the rule in situations where the common knowledge or experience of laymen is extensive enough to recognize or to infer negligence from the facts. See Butts v. Watts, Ky., 290 S.W.2d 777;

Johnson v. Vaughn, Ky., 370 S.W.2d 591.
■ It is our opinion that common knowledge and experience of laymen in respect to pregnancy is sufficiently extensive to warrant laymen's drawing an inference of culpable negligence in this case from the facts hereinbefore enumerated. Mrs. Jarboe had symptoms compatible with a condition of pregnancy; she was well within the age limits for pregnancy; the possibility of her being pregnant was discussed; a conveniently available, reasonably reliable test for pregnancy was not used; no tests were administered or X-rays taken to confirm the diagnosis of tumor; and no emergency existed to require haste in scheduling the operation An allegation of similar facts was held sufficient to state a cause of action in Bir v. Foster, Fla.App., 123 So.2d 279.

Even if it were considered that the foregoing facts are not quite enough to warrant a finding of negligence we would be of the opinion that the statement of the doctor, after the operation, that he "should have

run that test," throws sufficient additional weight into the balance to overcome the deficiency. Cf. Greenwood v. Harris, Okl., 362 P.2d 85 (where the doctor said: " '[T]his is a terrible thing I have done, I wasn't satisfied with the lab report, she did have signs of being pregnant. I should have had tests run again, I should have made some other tests.' He said, 'I am sorry.' "); Sheffield v. Runner, 163 Cal. App.2d 48, 328 P.2d 828 ("should have put her in the hospital."); Wickoff v. James, 159 Cal.App.2d 664, 324 P.2d 661 ("Boy, I sure made a mess of things."); Walter v. England, 133 Cal.App. 676, 24 P.2d 930 (made a "mistake".).

 Our ultimate conclusions are that Mrs. Jarboe was entitled to go to the jury on her claim for personal injuries attributable to the operation but not for those attributable to the miscarriage, and that the administrator was not entitled to go to the jury on his claim for wrongful death. However, it is our opinion upon a weighing of all relevant factors, that upon a new trial of Mrs. Jarboe's claim all of the issues should be retried, including the issue of proximate cause of the miscarriage.

 There is of course, no merit in the appellants' contention that the court, in directing a verdict for the appellee, deprived appellants of a *constitutional* right to a jury trial. See Masonic Widows and Orphans Home, etc. v. City of Louisville, 309 Ky. 532, 217 S.W.2d 815.

To the extent that the judgment dismisses the claim of Mrs. Jarboe for personal injuries it is reversed with directions to grant a new trial on that claim; in all other respects the judgment is affirmed.

STEWART, Judge (dissenting).

I dissent from the opinion because it has the effect of making the physician in the case at bar an insurer of the correctness of his judgment.

Previous to consulting Dr. Harting, Marie Jarboe had consulted another physician in connection with her condition, and he had made a tentative diagnosis of uterine tumor. She did not return to this physician but three days later consulted Dr. Harting. The latter took her history, made a physical examination, and concluded therefrom that she was suffering from a fibroid tumor of the uterus.

Dr. Harting performed an exploratory laparotomy and discovered Marie Jarboe was six to eight weeks pregnant. She had an uneventful recovery and returned to her home where, two weeks later, she miscarried.

At the trial no expert evidence was presented to show that Dr. Harting was negligent or that he failed to exercise the required care and skill in making his diagnosis or that there was any connection between the operation and the miscarriage.

The opinion holds that the miscarriage could not be said to be attributable to the operation. Then, in the next breath, it holds that Dr. Harting could be considered negligent by a jury if they, in effect, believed the operation was unnecessary. Of course, after the operation was completed it was found to have been uncalled for, as it was based upon a mistake of judgment.

The crucial question .in this case is whether Dr. Harting had an honest belief that an operation was proper.

It is a well-grounded principle of law that a physician is not liable to his patient for damages resulting from a bona fide error of judgment of which he may be guilty; and, when his decision depends upon an exercise of judgment, the law requires only that the judgment be bona fide. A physician is not an insurer of the correctness of his judgment. Especially is this true in cases of doubt or where competent medical authority is divided. See 41 Am. Jur., Physicians and Surgeons, sec. 82, pp. 200, 201.

In the case at bar it is uncontradicted that Dr. Harting made nothing more than an honest error of judgment. Another doctor also diagnosed Marie Jarboe as having a uterine tumor.

I would affirm the judgment.