RENDERED: JUNE 24, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0115-MR

RONALD N. ARNSPERGER, JR.                                          APPELLANT

v.
APPEAL FROM BOONE CIRCUIT COURT
HONORABLE JAMES R. SCHRAND, II, JUDGE
ACTION NO. 16-CI-01672

SAINT ELIZABETH MEDICAL
CENTER, INC., D/B/A ST.
ELIZABETH FLORENCE                                                   APPELLEE

OPINION
REVERSING

** ** ** ** **

BEFORE:  ACREE, TAYLOR, AND L. THOMPSON, JUDGES.

ACREE, JUDGE:  Ronald N. Arnsperger, Jr., appeals the Boone Circuit Court

summary judgment in favor of Saint Elizabeth Medical Center, Inc.  The issue is

whether the court erred by concluding Arnsperger's negligence claim required

expert medical testimony to prove causation.  We conclude it did not and reverse.

## BACKGROUND

Four days before the incident giving rise to the negligence claim, Dr. M. B. Shamsi performed surgery on Arnsperger's ankle, including placement of a screw to fixate and stabilize the joint. Despite several complications during surgery, Dr. Shamsi was optimistic about the outcome and preliminarily stated Arnsperger would need no further surgeries, provided his patient followed strict post-operative instructions. Arnsperger could not walk on his ankle or place any weight on it; consequently, he used a wheelchair to move around when he was in public. At home, deponents testified Arnsperger used either crutches or a scooter to move around, both of which conformed to Dr. Shamsi's instructions.

Three days later, Arnsperger saw Dr. Shamsi for his first post-operative visit. The doctor testified that his patient's splint was intact, and his ankle was doing well. The incident giving rise to the negligence claim occurred the next day when Arnsperger returned to the hospital for an x-ray of his ankle.

When Arnsperger arrived, he was placed in a wheelchair with his leg extended with no bend at the knee. A Saint Elizabeth employee, Pamella Tasayco, pushed Arnsperger through the hospital in his wheelchair. As she drew the wheelchair closer to the check-in desk, she failed to stop before Arnsperger's splinted ankle contacted the desk. Arnsperger's mother, his fiancée, and Tasayco described Arnsperger's expression of pain after the impact. His fiancée said he

began sweating, his face turned red, and he thought he was going to be sick. His mother stated his splint was askew after the impact. Arnsperger said he "felt a pop like a bomb had blown up in my foot."

The incident was recorded on the hospital's videotape surveillance equipment, but the angle of view is not ideal. However, the video could support a reasonable juror's inference consistent with either party's interpretation.[1]

Dr. Shamsi examined Arnsperger's ankle after the incident and determined Arnsperger needed another surgery to repair his ankle. In his deposition, Dr. Shamsi stated he had no opinion on how the new injury to Mr. Arnsperger occurred. However, Arnsperger contends the employee's actions caused him further injuries requiring a second surgery on his ankle.

To survive summary judgment, Arnsperger points to the eyewitness accounts given by his mother, fiancée, and the Saint Elizabeth employee, the substance of which is described above. Further, to rebut any claim Arnsperger's injuries came elsewhere – and to show a genuine issue exists – Arnsperger relies on testimony from himself, his mother, and his fiancée concerning Appellant's cautiousness and care at home after the surgery. Based on this evidence, Arnsperger used a scooter and crutches to move around his home, and he even

---

[1] Arnsperger describes the video as "showing the wheelchair's abrupt change of direction at the moment of impact with the desk (although the impact itself is obscured)." Saint Elizabeth says "the video demonstrates that there was no forceful 'ramming.'"

installed a ramp to get into and out of his home. He also applied slip-resistant material on his floors and his shower to avoid an accidental slip and fall. Appellant's mother and fiancée both testified that no accidents occurred prior to visiting Saint Elizabeth that could support the hospital's position that Arnsperger re-injured his ankle elsewhere than at the registration desk. The hospital's proof of that position is Dr. Shamsi's assertion that Arnsperger called him December 17, sometime after Arnsperger's first post-operative visit, alleging he bumped or injured his ankle.

The circuit court granted summary judgment because Arnsperger failed to produce an expert witness to determine if the employee's actions caused an injury to his ankle. Arnsperger appealed, arguing the circuit court erred because his injuries do not require a medical expert to relay to a layperson the cause-and-effect relationship between the employee's conduct and Arnsperger's injury. We agree.

## STANDARD OF REVIEW

Appellate courts reviewing an order granting summary judgment review the circuit court's order *de novo*. *Pinkston v. Aubudon Area Community Servs., Inc.*, 210 S.W.3d 188, 189 (Ky. App. 2006). *See also Hazel Enters., LLC v. Mitchuson*, 524 S.W.3d 495, 497-98 (Ky. App. 2017) (citations omitted). "The standard of review on appeal of summary judgment is whether the trial court

-4-

correctly found there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Carter v. Smith*, 366 S.W.3d 414, 419 (Ky. 2012). While the movant must establish that no genuine issue of material fact exists, *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 482 (Ky. 1991), the court views the evidence in the light most favorable to the nonmoving party. *City of Florence v. Chipman*, 38 S.W.3d 387, 390 (Ky. 2001). To survive summary judgment, the nonmoving party must point to "some affirmative evidence showing the existence of a genuine issue of material fact . . . ." *Id.*

## ANALYSIS

In Kentucky, to prove common law negligence, one must show "(1) a legally-cognizable duty, (2) a breach of that duty, (3) causation linking the breach to an injury, and (4) damages." *Howard v. Spradlin*, 562 S.W.3d 281, 286 (Ky. App. 2018) (citing *Patton v. Bickford*, 529 S.W.3d 717, 729 (Ky. 2016)). When determining the issue of causation, the question is a mixed one of law and fact. *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 89 (Ky. 2003). Thus, proving causation consists of the plaintiff demonstrating two components: but-for causation and proximate causation. *Patton*, 529 S.W.3d at 730. "But-for causation requires the existence of a direct, distinct, and identifiable nexus between the defendant's breach of duty (negligence) and the plaintiff's damages such that the event would not have occurred 'but for' the defendant's negligent or wrongful

-5-

conduct in breach of a duty." *Id.* It is important to note here that "[o]rdinary negligence . . . can be established without expert testimony." *Chamis v. Ashland Hosp. Corp.*, 532 S.W.3d 652, 656 (Ky. App. 2017) (citing *Caniff v. CSX Transp., Inc.*, 438 S.W.3d 368, 375 (Ky. 2014)).

However, in some instances, a plaintiff needs an expert witness to establish a *prima facie* case. For example, in the context of a medical malpractice case, a medical expert is required to establish "(1) the standard of skill expected of a reasonably competent medical practitioner and (2) that the alleged negligence proximately caused the injury." *Andrew v. Begley*, 203 S.W.3d 165, 170 (Ky. App. 2006). This is because a layperson does not have the knowledge necessary to intelligently decide whether a medical professional's actions caused a certain result or why a certain action would cause any particular result. Thus, due to the complexity of medical procedures, proof of medical negligence, almost always, must take the form of expert testimony. *See Johnson v. Vaughn*, 370 S.W.2d 591, 596 (Ky. 1963).

But an expert witness is not needed where "any lay[person] is competent to pass judgment and conclude from common experience that such things do not happen if there has been proper skill and care[.]" *Perkins v. Hausladen*, 828 S.W.2d 652 655 (Ky. 1992).

Here, the circuit court relied on *Jarboe v. Harting*, 397 S.W.2d 775 (Ky. 1965), for the proposition that Arnsperger needed medical expert testimony to survive summary judgment on the issue of causation. In *Jarboe v. Harting*, a doctor diagnosed the plaintiff with a tumor in her uterus. *Id.* at 777. To treat this, the doctor performed surgery on her, only to discover she was six to eight weeks pregnant. *Id.* Twenty-two days after the surgery, the plaintiff suffered a miscarriage and subsequently filed a *medical negligence* suit against the doctor.[2] *Id.* Kentucky's highest court ruled that the plaintiff needed to produce medical expert testimony to demonstrate proximate causation between the surgery and the miscarriage. *Id.* at 777-78. The Court believed miscarriages and unintended abortions occur for a "myriad" of reasons and the plaintiff produced no evidence to show "the operation was the cause [of the miscarriage] in this particular instance." *Id.* at 778. Ultimately, the plaintiff had not produced evidence demonstrating why the surgery caused the miscarriage, and the average layperson is not privy to the knowledge necessary to understand the potential cause-and-effect relationship of the surgery and the subsequent miscarriage.

The cause-and-effect relationship at issue in *Jarboe* – an errant medical procedure and a subsequent miscarriage – is distinguishable from the

---

[2] Again, we note Arnsperger filed a common law negligence claim against the hospital; Arnsperger did not allege medical malpractice.

-7-

alleged cause-and-effect relationship in this case – a wheelchair driver's collision and the patient's exacerbation of an ankle injury. Expert medical testimony is not needed to explain to a jury the possibility of the latter relationship. Reliance on *Jarboe* is misplaced. As this Court said in a slightly different context:

> Whether expert testimony is required . . . depends on whether hospital personnel were exercising professional judgment as opposed to rendering nonmedical, administrative, ministerial or routine care . . . . [A]n expert witness is unnecessary to establish staff members were negligent in not taking reasonable actions to protect the patient. *See Ratliff v. Employers' Liability Assur. Corp., Ltd.*, 515 S.W.2d 225, 228-29 (Ky. 1974) (collecting foreign cases).

*Chamis*, 532 S.W.3d at 656.

Oddly as it may sound, this case has more in common with a vehicle collision negligence case such as *Young v. J.B. Hunt Transportation, Inc.*, 781 S.W.2d 503 (Ky. 1989). We have no doubt an expert medical witness was not needed to testify to the negligence of the driver or drivers of the vehicles involved. Similarly, no expert medical testimony is necessary to determine the duty of a hospital staffer driving a wheelchair or to gauge whether that duty was breached. But *Young* did have a similar element:

> A central issue in the trial of this case was the nature and extent of the injuries sustained by appellant in the accident. Appellees contended that all or a substantial part of appellant's injuries arose out of a prior . . . accident. Appellant denied that the prior accident was the cause of his injuries.

*Id.* at 508.  In fact, in this case, Appellant denies there was a prior accident.

Whether there was or was not is an unresolved question only the jury can answer.

Lack of a medical expert in *Young* did not keep the case from proceeding to trial

on the issue of liability.  Nor does it prevent this case from proceeding to trial.

Arnsperger is not claiming his injury resulted from medical staff

performing a medical procedure.  He is claiming simple negligence on the part of

the hospital's agent.

## <u>CONCLUSION</u>

For the forgoing reasons, we reverse the Boone Circuit Court's order

granting summary judgment in favor of Saint Elizabeth.

ALL CONCUR.


BRIEFS FOR APPELLANT:

Shane C. Sidebottom
Covington, Kentucky

Justin A. Sanders
Louisville, Kentucky

BRIEF FOR APPELLEE:

Ellen M. Houston
Michael J. Enzweiler
Crestview Hills, Kentucky