Ashley BROWN, Appellant

v.

Eric P. GRIFFIN, M.D. and
The Women's Pavilion,
P.S.C., Appellees

NO. 2014–CA–001049–MR

Court of Appeals of Kentucky.

NOVEMBER 18, 2016; 10:00 A.M.

BRIEF FOR APPELLANT: Steven L. Boling, Owensboro, Kentucky, Evan Taylor, Owensboro, Kentucky

BRIEF FOR APPELLEE: Daniel G. Brown, Donald W. Darby, Robert J. Shilts, Louisville, Kentucky

BEFORE: COMBS, NICKELL AND VANMETER, JUDGES.

## OPINION

NICKELL, JUDGE:

Ashley Brown has appealed from the May 12, 2014, order of the Daviess Circuit Court granting summary judgment in favor of Eric P. Griffin, M.D., and The Women's Pavilion, P.S.C.,[1] on her claim for damages resulting from medical malpractice. Following a careful review of the briefs, the record and the law, we affirm.

On December 28, 2010, Brown underwent a total laparoscopic hysterectomy with left salpingo-oophorectomy and evaluation of the right ovary and tube performed by Dr. Griffin using a robotically-assisted *da Vinci* surgical system. The operative/procedure note dictated by Dr. Griffin indicated an inspection of the pelvis was undertaken, the course of both ureters was identified, all structures were freed up and removed, and the procedure was concluded without any noted complications. However, during the procedure Brown sustained an accidental and unnoticed injury to her right distal ureter. The injury manifested itself several days later and the resulting complications required multiple additional surgical interventions to correct.

On December 27, 2011, Brown filed the instant suit alleging Dr. Griffin failed to exercise appropriate care, negligently caused Brown's injury, and compounded the injury by negligently and unreasonably failing to identify the injury before concluding the initial surgical procedure. The suit alleged Dr. Griffin was acting as an agent for The Women's Pavilion, P.S.C., at the time of the surgery. Little activity occurred in the suit. Brown responded to initial discovery requests and gave her deposition on May 17, 2012. On August 2, 2012, Brown deposed Dr. Griffin. On September 13, 2012, Dr. Griffin deposed Brown's treating physician, Dr. David P. Russell. The case then went dormant with no additional pleadings being filed and no further discovery being conducted.

On October 14, 2013, the trial court entered a notice indicating no pretrial step had been taken for more than one year

---

1. The Women's Pavilion, P.S.C., appears to have been included in this action only under an agency theory, and all substantive complaints referred only to Dr. Griffin. Unless the context otherwise requires, our discussion will refer only to Dr. Griffin with the explicit understanding that our holding carries equal force as to The Women's Pavilion, P.S.C. and any claims by Brown levied against it.

and that the action would be dismissed for lack of prosecution on December 3, 2013, unless an affirmative step was taken showing good cause for the action to continue. Four days later, Dr. Griffin moved to dismiss the action based on Brown's failure to prosecute the case in any fashion since August of 2012. Brown finally responded to the trial court's notice and Dr. Griffin's motion on December 2, 2013, briefly restating her view of the facts of the case, indicating she had consulted with experts and would be able to identify her testifying experts within a short amount of time, and requesting a scheduling order putting her on a strict deadline to identify such experts by March 1, 2014. Brown asked that the case be permitted to move forward and not be dismissed. Following a hearing at which the trial court expressed its dismay at the lack of progress in the matter, a scheduling order was entered giving Brown until February 15, 2014, to identify her expert witnesses and provide detailed summaries of their opinions and expected testimony pursuant to CR[2] 26.02(4). At the hearing the trial court indicated dismissal was a viable possibility should Brown fail to timely file her expert disclosures. Dr. Griffin was given until April 30 to likewise identify his expert witnesses. The order set a final discovery deadline for June 15, 2014, and required the parties to schedule a motion in June 2014 to set a trial date.

The day before she was to identify her expert witnesses, Brown moved the trial court for an extension[3] to do so, alleging necessary information had not yet been finalized. Dr. Griffin filed an objection to the extension, renewed his motion to dismiss for failure to prosecute, and alternatively moved for summary judgment based on Brown's failure to offer any expert opinion supportive of her claim that Dr. Griffin deviated from the standard of care or in any way caused or contributed to her injuries, and thus had failed to establish a *prima facie* case of medical negligence. At a hearing on her motion, Brown assured the trial court she could comply with the disclosure requirements within sixty days and no further extensions would be requested. Brown further indicated her understanding "fully of what the court would do in sixty days." Over Dr. Griffin's objection, the trial court granted Brown an additional extension of time until April 15, 2014, to tender her expert disclosure.

Two weeks after the passing of the extended deadline, Brown had still not tendered the required disclosures, prompting Dr. Griffin to renew his motions to dismiss and/or for summary judgment. One week later, Brown submitted what purported to be an expert disclosure under CR 26.02 as well as a response to Dr. Griffin's summary judgment motion. The disclosure—designated as a third supplemental response to Dr. Griffin's interrogatories—listed Dr. Griffin and Dr. Russell as experts who were expected to testify consistently with their earlier depositions. Also listed was Bruce W. Romick, M.D., who was expected to testify as an expert in robotic-assisted surgical procedures and to offer his opinions regarding maintaining awareness of the ureter during procedures and explaining experience levels to patients, especially when a physician is new to proposed procedures. In her response to Dr. Griffin's summary judgment motion, Brown alleged Dr. Griffin's own testimony established the entirety of her case and elucidated an additional issue relative to informed consent wherein she argued Dr.

---

**2.** Kentucky Rules of Civil Procedure

**3.** Curiously, the February 14, 2014, motion requested a "30 (sic) time extension to April 15, 2014 in which to file Plaintiffs' Expert Witnesses." An obvious mathematical error is inherent in this request.

Griffin failed to inform Brown of his relative inexperience with operating using the *da Vinci* system. She argued a jury could infer the appropriate standard of care from the testimony contained in the depositions of record and further infer that Dr. Griffin's "newness" in robotically-assisted surgery contributed to her injury.

Following a hearing, the trial court determined Brown had failed to disclose the existence of any expert who would testify as to the appropriate standard of care or that Dr. Griffin had breached that standard of care in treating Brown. The court concluded she could not carry her burden of proof, granted Dr. Griffin's motion for summary judgment, and dismissed all pending claims. This appeal followed.

Brown raises three contentions in seeking reversal. First, she argues summary judgment was improperly granted because Dr. Griffin's admissions in his deposition were of a technical nature and of such magnitude that a jury could infer he acted negligently and the jury could infer from its own common experience that injury to an inappropriate part of the anatomy constituted negligence. In so arguing, Brown posits no expert testimony relative to the appropriate standard of care nor its breach are required under the circumstances. Second, Brown alleges Dr. Russell's testimony, coupled with the proffered testimony of Dr. Romick, was sufficient to establish a breach of the standard of care even though neither used those "magic words" in their testimony. Finally, Brown contends the trial court erroneously granted summary judgment as a sanction for the delay in disclosing her expert witnesses. We shall address Brown's first two arguments in tandem as they are interrelated before commenting briefly on her third and final argument.

■■■ CR 56.03 provides summary judgment is appropriate when no genuine issue of material fact exists and the moving party is therefore entitled to judgment as a matter of law. Summary judgment may be granted when "as a matter of law, it appears that it would be impossible for the respondent to produce evidence at the trial warranting a judgment in his favor and against the movant." *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 483 (Ky. 1991) (internal quotations omitted). "While the Court in *Steelvest* used the word 'impossible' in describing the strict standard for summary judgment, the Supreme Court later stated that word was 'used in a practical sense, not in an absolute sense.'" *Lewis v. B & R Corp.*, 56 S.W.3d 432, 436 (Ky. App. 2001). Whether summary judgment is appropriate is a legal question involving no factual findings, so a trial court's grant of summary judgment is reviewed *de novo*. *Coomer v. CSX Transp., Inc.*, 319 S.W.3d 366, 370–71 (Ky. 2010).

■■■ Although an appellate court reviews the substance of a summary judgment ruling *de novo*,

a reviewing court must also consider whether the trial court gave the party opposing the motion an ample opportunity to respond and complete discovery before the court entered its ruling. In a medical malpractice action, where a sufficient amount of time has expired and the plaintiff has still "failed to introduce evidence sufficient to establish the respective applicable standard of care," then the defendants are entitled to summary judgment as a matter of law. The trial court's determination that a sufficient amount of time has passed and that it can properly take up the summary judgment motion for a ruling is reviewed for an abuse of discretion.

*Blankenship v. Collier*, 302 S.W.3d 665, 668 (Ky. 2010) (internal citations omitted).

Whether expert testimony is required in a given case is squarely within the trial court's discretion. *Keene v. Commonwealth*, 516 S.W.2d 852, 855 (Ky. 1974). Absent an abuse of discretion, we will not disturb the trial court's ruling. *Baptist Healthcare Systems, Inc. v. Miller*, 177 S.W.3d 676, 680–81 (Ky. 2005).

Generally, liability for medical negligence requires expert medical testimony establishing the applicable standard of care and the breach thereof. However, there are two circumstances in which negligence may be inferred without expert medical testimony. The first is where the negligence and injurious results are "so apparent that laymen with a general knowledge would have no difficulty in recognizing it." *Jarboe v. Harting*, 397 S.W.2d 775, 778 (Ky. 1965) (citations omitted); *Johnson v. Vaughn*, 370 S.W.2d 591, 596 (Ky. 1963). *See also Perkins v. Hausladen*, 828 S.W.2d 652, 655 (Ky. 1992); *Baptist Healthcare Systems, Inc., supra*, at 680. The second is where other medical testimony provides an adequate " 'foundation for *res ipsa loquitur* on more complex matters.' " *Perkins, supra* at 655 (quoting *Prosser and Keeton on Torts*, Sec. 39 (5th ed. 1984)).

*Green v. Owensboro Medical Health System, Inc.*, 231 S.W.3d 781, 783–84 (Ky. App. 2007). Generally, expert testimony is necessary as negligence typically cannot be anecdotally inferred from the existence of adverse results. *Perkins*, 828 S.W.2d at 654–55.

Under Kentucky law, a plaintiff alleging medical malpractice is generally required to put forth expert testimony to show that the defendant medical provider failed to conform to the standard of care. Expert testimony is not required, however, in *res ipsa loquitur* cases, where "the jury may reasonably infer both negligence and causation from the mere occurrence of the event and the defendant's relation to it", and in cases where the defendant physician makes certain admissions that make his negligence apparent.

*Blankenship*, 302 S.W.3d at 670 (internal citations omitted).

In the instant case, Brown alleges the testimony contained in the depositions of Drs. Griffin and Russell was adequate to obviate the need for an expert witness to testify as to any breach of the standard of care, as this testimony—coupled with the jury's common experience—would permit an inference of negligence sufficient to withstand summary judgment. She relies on Dr. Griffin's statements that an injury occurred during the surgery which was not intended, observed, repaired nor documented. Brown further relies on Dr. Griffin's testimony regarding his training which requires him to maintain awareness of the location of the ureters throughout the course of a hysterectomy and to check their function prior to concluding the procedure. Dr. Russell essentially agreed with the statements proffered by Dr. Griffin. Neither doctor mentioned the standard of care—nor did Dr. Romick in his proffered testimony. Brown argues the whole of the testimony reveals she sustained an injury during the surgery through no fault of her own and thus, negligence and a deviation from the standard of care by Dr. Griffin could and should be inferred, even in the absence of the recital of any "magic words" regarding the standard of care by any expert. We disagree.

Brown never created a legitimate dispute about the need for expert testimony. Conversely, she affirmatively represented to the trial court she would be using expert witnesses, but those witnesses had not yet been secured. In her response to Dr. Griffin's interrogatories and requests for admissions, Brown stated she would be

able to prove her case through the use of expert witnesses but that "testifying experts have not yet been determined." Additionally, Brown filed a written motion requesting an extension of time to identify and disclose her experts. At the hearing on that motion she assured the trial court she had been in contact with multiple experts and was in the process of "firming up" those experts, would be able to finalize her disclosures forthwith, and was fully aware of the consequences of failing to comply with the trial court's directive. Only when facing a renewed summary judgment motion for not identifying any experts—filed some thirty months after the filing of the complaint—did she argue for the first time she could meet her burden of proof without expert testimony. Although she was given ample time to develop the record and disclose appropriate experts, she failed to do so. Her belated response, when considered in the context of the medical malpractice claim she stated in her complaint and her numerous assertions and assurances to the trial court regarding securing experts, was simply insufficient to create a legitimate dispute about the need for expert testimony.

Additionally, based on our review of the record, we are unable to discern any evidence supportive of Brown's position that negligence and a deviation from the standard of care could be inferred by a typical juror in the absence of an expert witness to so testify. Contrary to her vehement argument, neither is the *res ipsa loquitur* exception to the general requirement for expert testimony applicable based on the evidence of record. We cannot say jurors have general knowledge sufficient to understand the complex nature of robotically-assisted laparoscopic surgical procedures, the inherent risks and potential complications thereof, the mechanisms by which injuries or complications can occur, nor whether such injuries or complications can occur in the absence of negligence. Further, nowhere in the testimony of record are there sufficient "admissions" or statements of a technical nature which would make Dr. Griffin's negligence "apparent" and which would rule out any non-negligence-related causes of the injury.

Because Brown failed to identify any expert witnesses who could affirmatively state the appropriate standard of care and attribute a breach thereof to Dr. Griffin, never seriously disputed an expert would be needed and had asserted a medical malpractice claim which clearly required expert testimony, the summary judgment motion was properly before the trial court for ruling. The trial court correctly found there was no genuine issue of material fact precluding summary judgment.

Finally, Brown argues the trial court improperly granted summary judgment as a sanction for her delay in filing an expert witness disclosure. However, as previously stated, the trial court gave Brown ample time to develop the record, complete discovery, and introduce evidence of the applicable standard of care. Her failure to do so was fatal to her claim. Brown failed to establish a *prima facie* case of medical negligence—duty, breach and consequent injury. Although she attempted to set out the "dots" to establish her case, she simply did not connect them. Even a cursory reading of the trial court's order reveals summary judgment was not granted because of a time violation but because of a failure of proof. There was no improper sanction and no reason to disturb the trial court's judgment.

For the foregoing reasons, the judgment of the Daviess Circuit Court is affirmed.

ALL CONCUR.