RENDERED: MARCH 12, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0224-MR

FAITH ASHTON, IN HER OFFICIAL
CAPACITY AND INDIVIDUALLY;
CAROLYN FASSIO, IN HER OFFICIAL
CAPACITY AND INDIVIDUALLY;
JAHI PEAKE, IN HIS OFFICIAL
CAPACITY AND INDIVIDUALLY;
LAURIE WORKMAN, IN HER
OFFICIAL CAPACITY AND
INDIVIDUALLY; ALLEN BAKER,
IN HER OFFICIAL CAPACITY AND
INDIVIDUALLY; AND THE ESTATE
OF BESSIE E. WADLINGTON, IN
ITS OFFICIAL CAPACITY AND INDIVIDUALLY,
BY AND THROUGH THE ADMINISTRATOR,
RICHARD E. WADLINGTON                                    APPELLANTS


v.          APPEAL FROM JEFFERSON CIRCUIT COURT
            HONORABLE BRIAN C. EDWARDS, JUDGE
                 ACTION NO. 17-CI-000059


A. A., A MINOR, BY AND THROUGH
HER MOTHER AND NEXT FRIEND,
MARY AMES

                                                          APPELLEE

## OPINION
### REVERSING AND REMANDING

** ** ** ** **

BEFORE:  CALDWELL, MCNEILL, AND TAYLOR, JUDGES.

TAYLOR, JUDGE:  Faith Ashton, in her official capacity and individually; Carolyn Fassio, in her official capacity and individually; Jahi Peake, in his official capacity and individually; Laurie Workman, in her official capacity and individually; Allen Baker, in her official capacity and individually; and the Estate of Bessie E. Wadlington, in its official capacity and individually, by and through the administrator, Richard E. Wadlington, bring this interlocutory appeal from a January 16, 2020, Opinion and Order of the Jefferson Circuit Court denying appellants the shield of qualified official immunity.  We reverse and remand.

This case involves the alleged sexual assault of a kindergarten student, A.A., by another kindergarten student, L.E., while both were attending Whitney Young Elementary School.  A.A. and L.E. attended kindergarten during the 2015-2016 school year.  On February 13, 2016, A.A.'s mother, Mary Ames, informed Principal Mary Minyard that L.E. had put his hand down A.A.'s pants.  Ames also informed A.A. and L.E.'s primary teacher, Faith Ashton, of the allegation.  Ashton and other teachers instituted several measures to prevent L.E. from having contact with A.A. during the school day.  Nonetheless, on February 24, Ames again informed Principal Minyard that L.E. had once more put his hand down A.A.'s

pants. Ames also informed Ashton of the allegation. Additional measures were put in place to ensure L.E. did not have direct contact with A.A.

The Cabinet for Health and Family Services conducted an investigation of the allegations and found the allegations to be unsubstantiated. The Jefferson County Public Schools, Office of Compliance and Investigations, also investigated and found "the allegations that the . . . staff were aware of [L.E.'s] sexual behavior toward other students and did not address or ensure the safety of the students to be unsubstantiated." Report at 11.

On January 4, 2017, A.A., by her mother and next friend, Ames, filed a complaint in the Jefferson Circuit Court and named as defendants Donna Hargans, Superintendent of Jefferson County Public Schools, in her official and individual capacities, and Mary Minyard, Principal of Whitney Young Elementary School, in her individual and official capacities. A.A. also named as defendants: (1) the primary kindergarten teacher - Faith Ashton, in her official and individual capacities; (2) the music teacher - Carolyn Fassio, in her official and individual capacities; (3) the art teacher - Jahi Peake, in his official and individual capacities; (4) the gym teacher - Laurie Workman, in her official and individual capacities; (5) the classroom volunteer - Allen Baker, in her official and individual capacities; and

-3-

(6) the instructional assistant, the Estate of Bessie E. Wadlington, in its official and

individual capacities.[1]  In the complaint, it was particularly alleged:

> 1.      This is a case about an innocent five year old girl who was sexually assaulted twice by another child while in school at Whitney Young Elementary School.  The second incident of sexual assault occurred after Whitney Young administrators purportedly put measures into place to prevent another sexual assault from happening.
>
> 2.      A.A. is a minor child, having been born June 5, 2010 and having no guardian, curator, or committee, sues by her mother, Mary Ames, as her mother and next friend.
>
> . . . .
>
> 24.     Each Defendant had a duty, pursuant to common law and/or statute and/or other written or unwritten policies, regulations and/or rules to A.A. to exercise due care for her safety while A.A. was under their direction and control.
>
> 25.     Each Defendant breached said duty, and said breach caused injury to A.A.
>
> . . . .
>
> 28.     In or about January 2016, A.A. was sexually assaulted by a male student hereinafter referred to for anonymity purposes as "[L.E.]" while both

---

[1] Bessie E. Wadlington was an instructional assistant at Whitney Young Elementary School at the time of the alleged incidents.  Wadlington passed away on July 17, 2016, prior to the filing of the complaint.  Wadlington's estate and its administrator were named parties to the action for the alleged claims against her.

students were under the supervision of certain Defendants herein.

29. Specifically, without the consent of A.A., [L.E.] put his hands in A.A.'s pants and digitally penetrated A.A.'s vagina.

. . . .

31. A.A. should not have been sexually assaulted.

32. Immediately after learning of the foregoing incident, A.A.'s mother Mary informed Whitney Young administration, including some or all Defendants, that A.A. had been sexually assaulted during school hours.

33. Mary was informed that A.A. was not the first female student sexually assaulted in this manner by [L.E.], and that administration would assign another adult to stay with [L.E.] at all times to prevent him from sexually assaulting anyone else.

. . . .

36. A.A. was sexually assaulted again.

37. Specifically, on or about February 23, 2016, [L.E.] again put his hands in A.A.'s pants and again digitally penetrated A.A.'s vagina, again while both students were under the supervision of certain Defendants herein.

. . . .

41. The foregoing incidents of sexual assault occurred because A.A. and/or [L.E.] were either not being supervised or was [sic] not being supervised adequately by Defendants.

42. Pursuant to common law and/or statute and/or other written or unwritten policies, regulations and/or rules, Defendants herein had a ministerial duty to adequately supervise students in their charge, including A.A.

43. The conduct of Defendants was ministerial in nature, and/or was taken in bad faith, and/or was outside of the scope of their respective employment or authority, and/or violated Plaintiff's constitutional, statutory, or other well-established rights (which include but are not limited to rights contained in policies or procedures and/or case law and/or Kentucky Administrative Regulations), and/or is otherwise conduct for which Defendants are not entitled to immunity.

44. Defendants negligently and inadequately supervised A.A., thus breaching their ministerial duty.

45. Defendants had a duty to reasonably supervise A.A. while A.A. was at school to prevent A.A. from being sexually assaulted and to otherwise avoid and minimize injury to A.A., and that Defendants breached this duty.

46. Defendants had a duty to reasonably supervise [L.E.] while [L.E.] was at school to prevent [L.E.] from assaulting (sexually or otherwise) other students, and Defendants breached this duty, causing harm and damages to A.A.

. . . .

50. Defendants' special relationship with A.A., particularly when coupled with their knowledge that [L.E.] had a history of sexually assaulting

-6-

A.A. and other female students, required them to take all reasonable steps to protect A.A. from harm, ensure A.A.'s safety, and otherwise prevent A.A. from needlessly being injured and/or sexually assaulted by fellow students.

51. The Defendants herein failed to take reasonable steps to protect A.A., and Defendants took no action to prevent A.A.'s injury and damages.

52. The Defendants herein further had a common law duty to A.A. requiring them to exercise reasonable care to ensure her safety while at Whitney Young Elementary School.

53. Defendants' acts and/or omissions described herein above breached their duty to exercise reasonable care to ensure A.A.'s safety at Whitney Young Elementary School.

54. Each Defendant was negligent in failing to exercise due care for A.A.'s safety.

55. Each Defendant was negligent in failing to provide supervision reasonably necessary to safeguard A.A.

56. Defendants' failure to appropriately supervise A.A. constituted a violation of Kentucky law, including but not limited to law regarding the general supervision of the general conduct of the schools pursuant to KRS 160.370 and law requiring the implementation and enforcement of student discipline guidelines pursuant to KRS 158.148 *et seq.*, and Defendants are therefore negligent per se.

57. Defendants' negligence *per se* caused A.A. to endure and will continue to endure in the future

extensive mental and physical pain and suffering and medical expenses all in an amount sufficient to invoke the jurisdiction of this Court.

58. Plaintiff's injury was further directly and proximately caused by Defendants' negligent hiring, training, supervision, and/or retention of others, including but not limited to employees, independent contractors, or volunteers.

Complaint at 3-9. Defendants filed an answer and asserted the defense of immunity and subsequently filed a motion for summary judgment arguing entitlement to qualified official immunity. Defendants maintained that decisions as to appropriate measures to implement in the classroom in the wake of A.A.'s allegations required the use of judgment and discretion by them. In A.A.'s response, she maintained that the supervision of students was a ministerial act for which defendants enjoyed no official immunity.

By Opinion and Order entered January 16, 2020, the circuit court granted in part and denied in part the motion for summary judgment. The circuit court concluded that Superintendent Hargans and Principal Minyard were entitled to qualified official immunity. The circuit court observed that the superintendent and principal did not directly supervise children, and the principal acted in a discretionary function by investigating and implementing policies. However, the court also noted that Ashton, Fassio, Peake, and Workman were teachers directly tasked with supervising students. Likewise, Baker, a classroom volunteer, and

Wadlington, an instructional assistant, also directly supervised students. The circuit court concluded that the direct supervision of students by teachers or teachers' aids was a ministerial act. As a result, the circuit court held that Ashton, Fassio, Wadlington, Baker, Workman, and Peake (collectively referred to as appellants) were performing ministerial functions during their supervision of A.A. and were not entitled to qualified official immunity. This appeal follows.

To begin, summary judgment is proper where there exists no material issue of fact and movant is entitled to judgment as a matter of law. Kentucky Rules of Civil Procedure 56; *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476 (Ky. 1991). Our review proceeds *de novo*. *Brown v. Griffin*, 505 S.W.3d 777, 781 (Ky. App. 2016).

Appellants contend that the circuit court erred by denying their motion for summary judgment and concluding they were not entitled to qualified official immunity. Appellants maintain that their supervision of A.A. was fundamentally discretionary acts to which qualified official immunity applies. For the reasons set forth, we agree.

In Kentucky, a public official sued in his individual capacity for negligence may be entitled to the shield of qualified official immunity. To be entitled to qualified official immunity, the public official must have engaged in a discretionary as opposed to a ministerial act. A ministerial act is generally "one

that requires only obedience to the orders of others, or when the officer's duty is absolute, certain, and imperative, involving merely execution of a specific act arising from fixed and designated facts." *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001). Conversely, a discretionary act is one "involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment[.]" *Id.* If the public official performs a discretionary act, the official is entitled to qualified immunity if such act was carried out within the scope of her employment and in good faith. *Yanero*, 65 S.W.3d at 523.

Under facts very similar to those presented in this case, the Supreme Court held that supervision of students by a kindergarten teacher constituted a discretionary act. In *Turner v. Nelson*, 342 S.W.3d 866 (Ky. 2011), a kindergarten student, F.B., alleged that another kindergarten student, C.Y., sexually assaulted her while at school and brought an action against the kindergarten teacher for negligent supervision. The Supreme Court held that the teacher's supervision of F.B. and C.Y. was discretionary:

> [W]e consider Turner's actions in supervising the children to have been discretionary. While there may be legitimate disagreement as to the approach taken by Turner, the consequences of liability under such circumstances would injuriously "deter independent action and impair the effective performance of [teaching] duties." [*Haney v. Monsky*, 311 S.W.3d 235, 245 (Ky. 2010).]

-10-

It is imperative that teachers maintain the discretion to teach, supervise, and appropriately discipline children in the classroom. To do this, they must have appropriate leeway to do so, to investigate complaints by parents, or others, as to the conduct of their students, to form conclusions (based on facts not always known) as to what actually happened, and ultimately to determine an appropriate course of action, which may, at times, involve reporting the conduct of a child to the appropriate authorities. In fact, protection of the discretionary powers of our public officials and employees, exercised in good faith, is the very foundation of our doctrine of "qualified official immunity."

*Id.* at 876.

By so holding, the Supreme Court recognized that an "apparent incongruity with our precedent" existed as the Court had previously held that the direct supervision of students by a teacher constituted a ministerial act. *Turner*, 342 S.W.3d at 876. The Court resolved this apparent incongruity by pointing out the factual distinctions between the cases:

In *Yanero*, this Court deemed "enforcement of a known rule requiring that student athletes wear batting helmets during baseball batting practice" to be ministerial. 65 S.W.3d at 522. Unlike the teacher's decision-making in this case, a helmet requirement constitutes "an essentially objective and binary directive." *Haney*, 311 S.W.3d at 242 (*discussing Yanero*, 65 S.W.3d 510). As a result, "[t]here is no substantial compliance with such an order and it cannot be a matter of degree: its enforcement was absolute, certain, and imperative, involving merely execution of a specific act arising from fixed and designated facts." *Id.* (citation omitted) (internal quotation omitted). You do it

-11-

or you don't—and unlike here, there is no factual determination required for its application.

      Admittedly, we have also "rejected the notion that the *failure* of teachers . . . to supervise their students in the face of known and recognized misbehavior was a discretionary act." *Id.* at 244 (*discussing Williams*, 113 S.W.3d at 150). This decision stemmed from the requirement in KRS 161.180(1) that teachers must "hold pupils to strict account for their conduct on school premises, on the way to and from school, and on school sponsored trips and activities." *Id.* The dispute in this case, though, concerns the *means* of supervision rather than a *failure* to supervise students who were drinking and driving to and from a school-sponsored function as occurred in *Williams.*

*Id.* at 876-77.

We too are cognizant of a line of Supreme Court cases holding that the supervision of students by a teacher/coach constitutes a ministerial act. *See Ritchie v. Turner*, 559 S.W.3d 822 (Ky. 2018); *Patton v. Bickford*, 529 S.W.3d 717 (Ky. 2016); *Marson v. Thomason*, 438 S.W.3d 292 (Ky. 2014); *Williams v. Ky. Dep't of Educ.*, 113 S.W.3d 145 (Ky. 2003); *Yanero*, 65 S.W.3d 510. In these cases, the teachers' supervision involved enforcement of a known, specific rule or the complete failure to supervise. For instance, *Yanero*, 65 S.W.3d 510, involved enforcement of a helmet mandate during ball practice; and *Marson*, 438 S.W.3d at 301, involved implementation of an unwritten "standard procedure[.]"

In the case at hand, we believe the particular facts herein are wholly consistent with those in *Turner*, 342 S.W.3d 866.[2] As in *Turner*, appellants were *kindergarten* teachers faced with allegations of sexual assault made by one kindergarten student against another kindergarten student. And, in both cases, appellants were not enforcing a specific rule or a standard procedure with only binary options. Rather, appellants necessarily utilized their judgment and discretion on a daily basis to govern the interaction between the kindergarten students during each class.[3]

Accordingly, we hold that appellants' supervision of A.A. and L.E. constituted discretionary acts. As discretionary acts, appellants are entitled to qualified immunity if such acts were carried out within the scope of their employment and in good faith. *Yanero*, 65 S.W.3d at 523. It is clear that appellants were acting within the scope of their employment at the elementary school. As to good faith, there has not been an allegation that appellants failed to

---

[2] A.A., a minor by and though her mother and next friend, Mary Ames, argues that *Turner v. Nelson*, 342 S.W.3d 866 (Ky. 2011) has been impliedly "overruled," constitutes "bad law" and should be "ignored" by this Court. A.A.'s Brief at 12. As an intermediate appellate court, we are bound to follow Supreme Court precedent. Rules of the Supreme of Court 1.030(8)(a).

[3] A.A. also cites to Kentucky Revised Statutes 161.180 and Jefferson County Public School Policy 09.221 as support for the conclusion that appellants' supervision constituted a ministerial function. However, neither the foregoing statute or policy changes the fundamental discretionary nature of appellants' supervision under the unique facts of this case. On the contrary, this case is controlled by the Supreme Court's holding and reasoning in *Turner*, 342 S.W.3d 866.

act in good faith. Therefore, we are of the opinion that appellants are entitled to the shield of qualified official immunity.

For the foregoing reasons, the Opinion and Order of the Jefferson Circuit Court is reversed and remanded for proceedings consistent with this Opinion.

ALL CONCUR.

BRIEFS FOR APPELLANTS:

Mark S. Fenzel
Dana L. Collins
Elisabeth S. Gray
Louisville, Kentucky

ORAL ARGUMENT FOR
APPELLANTS:

Dana L. Collins
Louisville, Kentucky

BRIEF AND ORAL ARGUMENT
FOR APPELLEE:

A. Nicholas Naiser
Louisville, Kentucky